OPINION OF THE COURT
Orest V. Maresca, J.
“I’ve got a horse right here his name is Paul Revere and there’s a guy who says that if the weather’s clear can do, can do This guy says the horse can do If he says the horse can do can do, can do” (Frank Loesser, “Can Do” from Guys & Dolls).
On January 25, 1982, respondent New York State Rac *260 ing and Wagering Board denied petitioner’s application for a license as a thoroughbred racehorse owner. Respondent based its denial upon its finding that, like the character Nicely-Nicely, who sang the above-quoted verse, from Guys & Dolls, petitioner was a tout.
Petitioner seeks to annul the determination by the, respondent board and to compel the board to issue a license to him.
The New York State Racing and Wagering Board has general jurisdiction over all horse racing activities and pari-mutuel betting activities in New York State, both on-track and off-track, and over the corporations, associations and persons so engaged (L 1973, ch 174, § 1; ch 346, § 3, as amd by L 1976, ch 92, § 7). In order to compete at any thoroughbred race meeting where pari-mutuel betting is conducted, owners of thoroughbred racehorses must be licensed by the board (9 NYCRR 4002.2). The board is charged with the responsibility for licensing racing participants in accordance with the criteria set forth in section 4 of chapter 324 of the Laws of 1951, as amended. That section provides, in pertinent part, that the board: “may refuse to issue or renew a license, or may suspend or revoke a license issued pursuant to this section, if it shall find that the applicant * * * is consorting or associating with * * * bookmakers, touts, or persons of similar pursuits, or has himself engaged in similar pursuits”.
On petitioner’s original application for a thoroughbred racehorse owner’s license, he stated that he was president of the Baltimore Bulletin, and described his business as “direct mail advertising”. Upon submission of the application to .the board, a routine inquiry commenced concerning petitioner’s financial responsibility. In aid of their inquiry, the board contacted the Thoroughbred Racing Protective Bureau (TRPB) (an industry information clearinghouse, used by many racetracks and State racing commissions throughout the country) seeking any files it may have pertaining to petitioner’s activities. In addition, representatives of the Maryland Racing Commission were contacted regarding petitioner’s status as a licensee, and with the New Jersey Racing Commission regarding his status *261 there as an applicant. Thereafter, petitioner’s application was reviewed, together with the TRPB’s reports and other accumulated materials.
On January 25, 1982, the board voted unanimously to deny the application, finding that petitioner is a professional tout. The board noted that Mr. Lasky’s publications frequently convey the impression that he has inside information that would not be available to even the best legitimate handicapper, suggesting that this information involves activity which is, at the very least, contrary to the rules of racing. It was the board’s belief that licensing Mr. Lasky while in his current profession would create an actual or apparent conflict of interest situation that is harmful to the public’s perception of racing.
Petitioner contends that he is not a “tout” within the meaning of section 4 of chapter 324 of the Laws of 1951, as amended, and the Rules of the New York State Racing and Wagering Board (9 NYCRR 4002.8) or within the meaning of “tout” as that term is used as a proscribed activity in the context of racing, and that the board’s determination was arbitrary, capricious and an abuse of discretion. In addition, he claims that, given the board’s construction of “tout” in section 4 of chapter 324 of the Laws of 1951, as amended, and implementing regulations, the statute and regulations are overbroad, vague and irrational, and violate petitioner’s rights to due process and equal protection of laws as guaranteed by the Fourteenth Amendment to the United States Constitution and section 11 of article I of the New York State Constitution.
Petitioner argues that the board construed “tout” as a handicapper and that “in the absence of fraud and/or the offering of different selections in the same race to different customers”, such construction renders the statute unconstitutional.
A handicapper is “one who rates the entries in a race before post time, who figures out the order of finish of a race beforehand. Factors include distance, weight, track condition, riders, past performances, breeding, idiosyncracies of horses, etc.” (Glossary of Racing Terms, issued by the NY State Racing & Wagering Bd.)
*262 A “tout” on the other hand is “a person who obtains information on racehorses and their prospects and sells it to bettors” (American Heritage Dictionary [Houghton-Mifflin Co., 1980 ed]; see, also, Webster’s New Twentieth Century Dictionary [unabridged, 2d ed, 1977]). Scarnes New Complete Guide to Gambling (Simon & Shuster [1974]) defines a tout as “a person who makes a living at or away from the track by trying to convince anyone who will listen that he has useful inside information” (emphasis supplied).
In reviewing the various representative publications authored by petitioner, the board concluded that his publications tend to create the impression that he has inside information as to which horses will win particular races. A perusal of petitioner’s publications confirms that the materials do tend to create that impression. The board’s conclusion therefore, that petitioner is a tout as that term is consistently defined in the context of racing, and that his activities are not in the best interests óf racing is neither arbitrary, capricious nor an abuse of discretion.
It is important to remember that as a sporting event, horse racing occupies a unique position among the professional sports activities which take place in this State; it is the only sport in which wagering is legal. As such, the State has a vital interest in protecting the integrity of the sport (see Barry v Barchi, 443 US 55; Hubel v West Virginia Racing Comm., 513 F2d 240) and preventing any potential for abuse. The New York State Racing and Wagering Board, having been delegated the responsibility to regulate racing and pari-mutuel betting, reviews many applications such as the one submitted by Mr. Lasky. Its decision in this case, to deny Mr. Lasky a license is consistent with its responsibilities to the sport, to the public and to the State.
Petitioner’s argument that the statute and implementing regulations are unconstitutionally overbroad, vague and irrational is without merit. A fair reading of the language, as measured by common understanding and practice, clearly gives adequate warning of the type of conduct prohibited. In addition, the Legislature, by its enactment of section 4 of chapter 324 of the Laws of 1951, *263 as amended, was of the opinion that licensing touts was inconsistent with the public interest, convenience and necessity and not in the best interests of racing generally, and since owning, training and racing horses is not one of life’s “common occupations” (see Medina v Rudman, 545 F2d 244), it may be subject to the strictest type of regulation.
Petitioner also argues that insofar as the board reached a determination without affording him the benefit of a hearing, he was denied due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and sections 6 and 11 of article I of the New York State Constitution. This argument was similarly addressed by the Court of Appeals in Matter of Fink v Cole (1 NY2d 48, 53), where it was stated that the administrative machinery (with respect to processing licenses for thoroughbred racing) “was created for the purpose of determining whether a privilege — a license — should be granted to citizens to engage in the business of horse racing”. Since there is no absolute right to a racehorse owner’s license, petitioner has no “claim of entitlement” that would require the board to grant him a hearing (see Perry v Sindermann, 408 US 593, 601).
Finally, petitioner’s alternate request that the action be treated as one for a declaratory judgment is unnecessary.
Accordingly, the petition is denied.