**Michael V. DEVINE and Elizabeth Devine, Plaintiffs,**

v.

**The VILLAGE OF PORT JEFFERSON, et al., Defendants.**

No. CV 93–0060.

United States District Court,
E.D. New York.

April 26, 1994.

Kreines & Engelberg by Richard A. Engelberg, Mineola, NY, for plaintiffs.

D'Amato & Lynch by Lisa L. Shrewsberry, New York City, for defendants.

WEXLER, District Judge.

Michael V. Devine and Elizabeth Devine, plaintiffs in the above-referenced action, brought suit against the Village of Port Jefferson ("Port Jefferson" or the "Village"), the Board of Trustees of the Village of Port Jefferson and individual members of the Board of Trustees in both their official and individual capacities alleging that defendants violated their due process, equal protection and contract clause rights when they closed certain roads in the subdivision where plaintiffs live, roads in which plaintiffs were allegedly granted an easement. Plaintiffs also complain that their rights were violated when defendants opened certain roads in the subdivision to the general public which in the past had only been accessible to residents of the subdivision. Finally, Michael Devine claims that his first amendment rights were violated when at a village meeting he was threatened with arrest if he continued to speak out against defendants' action. Presently before the Court is defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motion for summary judgment is granted in full and plaintiffs' motion is denied.

## I. BACKGROUND

On March 23, 1988, the Devine's purchased a lot in the Port Jefferson Landing Subdivision (the "subdivision"). Their lot abuts a road known as Jefferson Landing Circle which travels around the circumference of the subdivision and provides a means of ingress and egress for the subdivision.[1] Three roads intersect with Jefferson Landing Circle which provide alternate means into and out of the subdivision.

Plaintiffs claim that the builder of the subdivision (the "builder") granted them certain easements in these three roads. Plaintiffs' deed refers to subdivision map 7789 which was approved by the Village and filed with the County Clerk of Suffolk County in 1984. That map contained the following handwritten notation which plaintiffs claim gave rise to their easements:

> PINE TREE COURT, ELLEN DRIVE, & RED OAK COURT WILL BE PROVIDED WITH HALF THE PAVING WIDTH (15LF) ONLY AND DROP CURBS INSTALLED AT THEIR INTERSECTION WITH JEFFERSON LANDING CIRCLE FOR LIMITED HOMEOWNER ACCESS
>
> LOTS ON THIS SUBDIVISION SHALL NOT BE FURTHER SUBDIVIDED
>
> 20 SCALE GRADING PLANS TO BE REQUIRED ON ALL NEW CONSTRUCTION & FOR CONSTRUCTION OF POOLS & OTHER [unintelligible]

When plaintiffs bought their property, Pine Tree Court, Ellen Drive and Red Oak Court were accessible only to the homeowners in the subdivision. Apparently, the owner of the subdivision placed fencing at the mouth of these streets allowing only the residents of the subdivision access. Indeed, this type of fencing is indicated on map 7789 and plaintiffs claim that reference in the map to this fencing gave rise to a negative easement by the builder in favor of plaintiffs and other subdivision residents. In 1991, the Village Board of Trustees accepted dedication of the subdivision.[2] On October 10, 1991, the Village closed Red Oak Drive and Ellen Drive and at the same time opened Pine Tree Court to the general population.

The Village argues that it chose to close two of the streets because it was concerned that it would open itself up to liability if it permitted continued access on these unimproved roads. It further argues that it opened Pine Tree Court to the public because under Village law a subdivision this size requires more than one means of entrance or exit. The Village also received warnings from its Fire Department that more than one thoroughfare into the subdivision was necessary in case of an emergency.

Plaintiffs argue that other subdivisions in the Village have only one means of ingress and egress and that the Village in those instances have not required that those subdivisions open roads to the public. Moreover, plaintiffs also claim that the Village has violated its own ordinances by opening a road that does not meet its own safety code.

In addition to complaining about the opening and closing of these three roads, Michael Devine alleges that his first amendment rights were violated when the Mayor of the Village threatened him with arrest at a public meeting when he was attempting to air his views regarding defendants' action. In response, defendants have submitted the minutes of meetings reflecting that Michael Devine was permitted to speak out against the Village's action with respect to the subdivision on more than one occasion. Moreover, the Mayor of the Village has also submitted an affidavit stating that it was only after Devine became disruptive at the public meeting, raising his voice, interrogating Board members and not permitting other members of the community an opportunity to speak or

---

1. In their deed, plaintiffs were granted an express easement in Jefferson Landing Circle so that they could enter and exit the subdivision.

2. The parties dispute when the offer of dedication was officially accepted by the Village. This Court finds, however, that this date is immaterial to the resolution of this case.

the public officials to complete their business did he refuse anymore input from Devine. The Mayor, however, denies that he ever threatened Devine with arrest. Devine does not dispute the Mayor's characterization of his behavior at the public meeting at issue but does contend that the Mayor threatened him with arrest.

## II. *DISCUSSION*

To prevail on a summary judgment motion, the moving party must establish that the "pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In considering such a motion, the Court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510.

### 1. *Due Process Claims*

The gravamen of plaintiffs' complaint is that they were granted certain easements in the three roads at issue and that the Village extinguished these easements without due process or just compensation when it closed Ellen Drive and Red Oak Court and opened Pine Tree Court to the public.[3]

■ It is axiomatic that a state may not deprive a person of property without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). It is also well settled that in order to determine whether a property interest exists, a court must look to state law. *Roth*, 408 U.S. at 566, 92 S.Ct. at 2703. Here, it is clear that under New York state law, plaintiffs have not been granted any easement in the roads at issue.

■ Under New York law, in order to establish an express easement, "there must be a writing containing plain and direct lan-

guage evincing the grantor's intent to create a right in the nature of an easement rather than a revocable license." *Willow Tex, Inc. v. Dimacopoulos*, 68 N.Y.2d 963, 510 N.Y.S.2d 543, 544, 503 N.E.2d 99, 100 (1986). Plaintiffs rely solely on the notation found in Map 7789 to support their contention that the builder granted them an easement in the roads. This language, however, is insufficient, as a matter of law, to give rise to an express easement.

Map 7789 was submitted by the builder to the Village for approval. It is readily apparent that the notation was merely describing what the builder intended to do on the site and was not meant to convey any property interest to the future residents of the subdivision. This is borne out by the fact that the plaintiffs' deed contained an express easement entitling them to access to Jefferson Landing Circle. Had the builder intended to grant plaintiffs an easement in the roads at issue, he knew how to do so clearly and unequivocally. Where, as here, "there is an ambiguity as to the permanence of the restriction to be imposed ... the right of use should be deemed a license, revocable at will by the grantor, rather than an easement."[4] *Id.*

■ Moreover, this Court also finds that under New York law, plaintiffs were not granted an implied easement in the roads. "[I]mplied easements are not favored in the law and the burden of proof rests with the party asserting the existence of facts necessary to create an easement by implication to prove such entitlement by clear and convincing evidence." *Abbott v. Herring*, 97 A.D.2d 870, 469 N.Y.S.2d 268, 270 (3rd Dep't 1983), *aff'd*, 62 N.Y.2d 1028, 479 N.Y.S.2d 498, 468 N.E.2d 680 (1984). *See also Buck v. Allied Chemical Co.*, 77 A.D.2d 782, 431 N.Y.S.2d 222, 223–24 (4th Dep't 1980). In order to establish an easement by implication, the following four elements must be present:

(1) the relevant parcels of land must have once been in unitary ownership; (2) a use

---

3. With respect to Pine Tree Court, it is apparently plaintiffs' position that opening the road to the public somehow diminished their interest in the road.

4. This reasoning also extends to the markings on the map indicating that knock-down fencing would be installed at the mouths of the three intersecting roads.

must have been established in which one part or parcel of the land was subordinated to another; (3) the use must be plainly and physically apparent by reasonable inspection; and (4) the use must affect the value of the estate benefitted and it must be necessary to the reasonable use of such estate.

*United States v. O'Connell,* 496 F.2d 1329, 1333 (2d Cir.1974).

■  The essence of an implied easement is that it is necessary for the enjoyment of the benefitted estate. Thus, it is generally accepted that a purchaser who buys a plot of land in a subdivision gains an implied easement in the streets that abut his or her property. It is also well settled that

> a grantee of property abutting on a street does not acquire an implied easement on any other street than that on which he abuts, and on that street only to the next intersecting streets. In other words, its really an easement of access.

*Nichols Copper Co. v. Connolly,* 208 A.D. 667, 203 N.Y.S. 839, 847 (2d Dep't 1924), *aff'd,* 240 N.Y. 596, 148 N.E. 720 (1925); *accord De Ruscio v. Jackson,* 164 A.D.2d 684, 565 N.Y.S.2d 593, 595 (3rd Dep't 1991).

Here, none of the roads at issue abut plaintiffs' property. Moreover, the builder granted plaintiffs an express easement in Jefferson Landing Circle thereby enabling plaintiffs to access the subdivision. Thus, plaintiffs have not established that access to the three roads in question is "necessary to the reasonable use" of their property. Accordingly, this Court concludes that, as a matter of law, plaintiffs do not have an implied easement in the roads.

Because plaintiffs had no property interest in the three roads, they were not entitled to any notice or hearing before the Village took action. Furthermore, because plaintiffs had no interest in the roads, they are not entitled to any compensation flowing from the Village's decision to close two of the roads and open the third to the public. Accordingly, plaintiffs' procedural and substantive due process claims are dismissed.[5]

2.  *Equal Protection*

■  Plaintiffs claim that they were denied equal protection of the law because similarly situated subdivisions within Port Jefferson were not required to open roads to the public, even though they too had only one entrance. Notably absent from plaintiffs' complaint or materials submitted in opposition to the summary judgment motion is any indication that defendants engaged in selective and improper enforcement of the local law based on any sort of class-based invidious discrimination. *See Brady v. Town of Colchester,* 863 F.2d 205, 216 (2d Cir.1988). The mere fact that defendants forced plaintiffs' subdivision to comply with local law, while allowing other subdivisions to persist in violation of that law,[6] without more, does not make out an equal protection violation. Accordingly, plaintiffs' claim brought under the equal protection clause is dismissed.

3.  *First Amendment Claim*

Michael Devine claims that his first amendment rights were violated when the Mayor allegedly threatened him with arrest for speaking out at a public meeting. Devine does not dispute that he disrupted the meeting. Evidently, it is Devine's position that the first amendment allows individuals to disrupt public meetings and that any attempt by a government official to regain control of the meeting violates the first amendment.

■  Because the Village held open meetings, inviting public discourse on the matters at hand, this Court views those meetings as a limited public forum for first amendment analysis. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–956, 74 L.Ed.2d 794 (1983); *City of Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50

---

**5.**  Plaintiffs also brought a claim under the contract clause alleging that the Village's action with respect to the roads interfered with their contract with the builder. Because this Court has determined that the builder did not grant plaintiffs any easement, this claim is dismissed as well.

**6.**  Apparently, the Mayor of Port Jefferson lives in one such subdivision.

L.Ed.2d 376 (1976). Reasonable time, place and manner restrictions on speech in limited public fora comport with the Constitution so long as they are content-neutral, serve a significant government interest and leave open alternative channels for expression. *See United States Postal Serv. v. Council of Greenburgh Civil Ass'ns,* 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981).

 The record indicates that Devine, along with other members of the community, spoke out vehemently and on many occasions against the defendants' proposal to open the roads. It was only after Devine began to shout, drown out other members of the community, and interrupt members of the Board as they attempted to proceed with the business at hand did the Mayor request that Devine stand down. When plaintiff continued with his outburst, the Mayor allegedly threatened him with arrest.[7]

There is absolutely no indication that the Mayor threatened Devine with arrest because of the content of his speech. To the contrary, the record reveals that the Mayor and the Board allowed a broad range of views, including views adverse to their own, to be expressed at all the meetings where the road issue was discussed. This Court finds that the Mayor's action was in response to Devine's disruptive behavior as opposed to the content or viewpoint of his speech. Additionally, the Village had a significant interest in conducting its meeting in an orderly and effective fashion. Moreover, any threat of arrest was a reasonable response to Devine's failure to follow the Mayor's directive and cease interrupting the public meeting. *See Stefan v. Laurenitis,* 695 F.Supp. 1330, 1341 (D.Mass.1988), *rev'd on other grounds,* 889 F.2d 363 (1st Cir.1989). Once the Mayor instructed Devine to stop disrupting the meeting and Devine refused to comply, the Mayor was left with little alternative than to threaten arrest if he wished the meeting to proceed. Finally, this Court also notes that Devine was left with ample channels to communicate his outrage over the defendants' action. This very lawsuit is indicative of

that. Accordingly, Devine's first amendment claim is dismissed.

### III. *CONCLUSION*

For the above-stated reasons, plaintiffs' claims brought under the due process clause, equal protection clause, contract clause and first amendment of the United States Constitution are hereby dismissed. Furthermore, inasmuch as no federal claims survive, this Court declines to exercise supplemental jurisdiction and dismisses all state claims as well.

SO ORDERED.

---

7. The Mayor denies threatening Devine with arrest. This Court cannot determine whether such a threat was made but will assume for the purpose of deciding this motion that the threat was made.