Robert **PEREZ**, Plaintiff,

v.

Michael J. **HOBLOCK**, Jr.,
et al., Defendants.

No. 01 CIV. 5573(RMB).

United States District Court,
S.D. New York.

Feb. 28, 2002.

Joesph Faraldo, Esq., Alan D. Levine, Esq., for plaintiff.

Michele N. Beier, Esq., Assistant Attorney General, for defendant.

## ORDER

BERMAN, District Judge.

## I. Introduction

Thoroughbred race-horse owner and licensee of the New York State Racing and Wagering Board ("Racing Board") Robert Perez ("Perez" or "Plaintiff") brings this action to challenge a $3,000 fine imposed on him by the Racing Board following a profanity-laced verbal and physical outburst by Plaintiff at a meeting he requested, and which was held on August 31, 2000.[1] Plaintiff contends that by upholding the fine, imposed pursuant to N.Y. Comp.Codes R. & Regs. ("NYCRR"), Title 9, Section 4022.13 ("Section 4022.13"), defendants Michael J. Hoblock, Jr., the Chairman of the Racing Board ("Hoblock"), Cheryl Buley ("Buley") and Joseph J. Neglia ("Neglia"), members of the Racing Board, and Edward J. Martin, the Executive Director of the Racing Board ("Martin," and collectively with Hoblock, Buley and Neglia, "Defendants"), improperly penalized him for the exercise of his free speech in violation of the First and Fourteenth Amendments to the United States Constitution. In his Amended Complaint, Plaintiff asks the Court to: (i) declare 9 NYCRR § 4022.13 unconstitutional "on its face and as applied to him in that it is overbroad and unconstitutionally vague;" (ii) "permanently enjoin Defendants from imposing any penalty or ... collecting any fine from him based upon his alleged violation of 9 NYCRR § 4022.13"; and, (iii) declare that the imposition of a fine pursuant to "9 NYCRR § 4022.13 is a taking of his property without due process of law."

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), filed on November 29, 2001 ("Def.Mem."). Plaintiff filed his opposition on June 3, 2002 ("Pl.Mem."), and Defendants filed a reply on July 11, 2002 ("Def.Reply"). By Order dated January 31, 2003, the Court requested further (simultaneous) briefing, namely Plaintiff's Supplemental Memorandum and Defendants' Supplemental Memorandum. **For the reasons set forth below, Defendants' motion is granted.**

## II. Background

The facts were established at an administrative appeal hearing held by the Racing Board on January 18, 2001 and are not in meaningful dispute. *See* Pl. Mem. at 16 ("Both Mr. Perez and the defendants rely upon the record made at the Racing Board hearing for their account of the events that ultimately led to this lawsuit."); Def. Mem. at 4 (relying on "unrefuted testimony at the formal administrative appeal hearing"); *see also Kraft Gen'l Foods, Inc. v. Cattell,*

1. Plaintiff's amended complaint, dated July 11, 2001 ("Amended Complaint"), alleges that the Racing Board fined him $1,500. *See* Amended Complaint at ¶ 23 ("At a meeting of the Board held April 30, 2001, defendants Hoblock, Buley and Neglia ... imposed a fine of $1,500.00 on plaintiff.") The parties have recently agreed that the fine imposed was $3,000. *See* Plaintiff's Supplemental Memo- randum, dated February 14, 2003 ("Pl. Supp.") ("The final fine imposed by the Board was .... 'three thousand dollars'") (citation omitted); Defendants Supplemental Memo- randum, dated February 18, 2003 ("Def.Supp.") ("the New York State Racing and Wagering Board ... allowed the $3,000 fine to stand.").

18 F.Supp.2d 280, 284 (S.D.N.Y.1998) ("it is well settled that a certified transcript of judicial or administrative proceedings may be considered on a motion for summary judgment") (quoting *Langston v. Johnson,* 478 F.2d 915, 918 n. 17 (D.C.Cir.1973)).

On August 31, 2000, the stewards responsible for managing the Racing Board's annual meeting at Saratoga, New York ("Stewards") called a special meeting to address a complaint by Plaintiff that the race secretary of the New York Racing Association ("Racing Association"), Mike Lakow ("Lakow"), was allegedly acting unfairly in selecting which horses ran in which races.[2] Transcript of Jan. 18, 2001 Hearing ("Tr.") at 6–8, 12. When the Stewards advised Lakow about the meeting Plaintiff had requested, Lakow said that he (also) had a complaint about Plaintiff that he wanted to address, Tr. at 70, namely that the day before, Plaintiff had started "cursing and screaming loudly" at him outside the administrative offices at Saratoga. Tr. 113–14.

The August 31, 2000 meeting, which was held in the Saratoga racetrack office of Dave Hicks ("Hicks"), the Racing Association Steward who had called the meeting, was attended by Plaintiff, Lakow and the three Stewards. Tr. at 8–10. At the meeting, Perez complained that Lakow was trying to favor certain thoroughbred owners by placing only five or six horses, rather than twelve horses, in some races. Tr. at 28–29 (Perez "was saying that Mr. Lakow [was] again, fixing races ... and that it wasn't fair and [Lakow] let[ ] races

go for certain people. And [Perez] was trying to compare that there were, say, twelve horses in one race and here were only six in another race."). Shortly after the meeting began, Lakow commented that Plaintiff's complaint was "ridiculous." Tr. at 130. Perez "explod[ed]" and started "pounding the desk," saying "fuck this and fuck that" and "I'll choke him [Lakow]." Tr. at 32, 130. Lakow sat in place, looking "scared to death." Tr. at 71–72.

Hicks decided that "it was best for me to talk to [Perez] as a friend to get him out of there and talk to him and say, Bobby, you know, relax." Tr. at 53. Perez, however, refused to go outside the meeting room and, instead, "started ... cursing at [Lakow] and threatening, he made remarks and ... then he started raising his voice, cursing and carrying on." Tr. at 54. An employee working in the office next door heard the escalating "yelling" and "commotion" through the wall, and said to her co-workers, "God what the heck is going on back there." Tr. at 102. By then, Hicks decided that the meeting could not continue and the Stewards got up to leave. Tr. at 14. 56–57 ("I couldn't conduct a meeting, no, I couldn't. Not after that kind of display of temper.... It was a washout .... It was too much animosity in the room toward the ... Race Secretary.")

When the Stewards started for the door, Perez "said, you know, fuck this and this isn't right." Tr. at 33. Perez then began "hollering" at Hicks and (repeatedly) called him a "cocksucker." Tr. at 16, 31, 57. Hicks then told Perez that he was

---

**2.** New York State law provides that three Stewards are responsible for. supervising all thoroughbred races in New York, 9 NYCRR § 4022.3. One Steward is designated by the Racing Board, another by the Racing Association, and the third by the Jockey Club. *See* 9 NYCRR § 4022.3. "Specifically, Stewards are responsible to supervise every race meeting, to determine all race questions, to investigate complaints against race officials, and to regu-

late and control the conduct of all officials and participants in racing." Def. Mem. at 2. The Racing Association is distinct from the Racing Board, and is a private, non-profit organization that owns and operates the three largest racetracks in New York—Aqueduct, Belmont Park and Saratoga. *See Jacobson v. New York Racing Ass'n, Inc.,* 33 N.Y.2d 144, 350 N.Y.S.2d 639, 640, 305 N.E.2d 765 (1973).

going to recommend a fine of $500 because of Perez' abusive behavior. Tr. at 40 ("problem" with Perez was "[t]he abusive language and the way he conducted himself"). Perez replied, "make it a thousand," and he cursed again. Tr. at 57. Hicks obliged and raised the fine to $1000. *Id.* ("He swore again, I [made] it a thousand."). Perez "cursed more," saying "that's a thousand, make it two thousand." Tr. at 35, 56. Perez kept swearing until Hicks raised the fine to $5,000. Tr. at 57. Finally, Perez said, "Fine me ten thousand, I don't really care," Tr. at 14, to which Hicks replied, "Well, I can't go that far, Bobby." [3] Tr. at 57; *see also* Tr. at 60 ("[T]he only way would be the next step, and I've done it in the past over the years, was to suspend them for their behavior in that type of situation. And I didn't want to do that.").

Thereafter, a "security guard came out from the [jockey]'s room." Tr. at 14 The guard had heard the yelling at his post, approximately fifty to seventy-five feet from the Steward's office, through a "big solid wood door." Tr. at 143. One of the Stewards, Carmine Donofrio ("Donofrio"),

testified that he was "looking for [the guard] anyway, and all I said was, you know, get him out of here, meaning Mr. Perez. And he left on his own at that point." Tr. at 14

Following the August 31, 2000 meeting, the record indicates that the Stewards conferred and reviewed Plaintiff's behavior. Donofrio, as the Steward for the Racing Board, proposed a $3,000 fine for violation of Section 4022.13. *See* Report of Hearing Officer Edward J. Martin, dated Apr. 26, 2001 ("Hearing Report") at 1, attached as Exhibit B to Declaration of Alan D. Levine, dated May 30, 2002 ("Levine Declaration"). Hicks testified that the Stewards fined Perez "for his display of temper and use of profane language, which he was using, in the presence of the Stewards as well as the Racing Secretary and other people that were listening in nearby offices where the door was wide open." Tr. at 59.

Pursuant to 9 NYCRR § 4022.14 ("Section 4022.14"), Plaintiff appealed the fine to the Racing Board, which held a hearing on January 18, 2001 ("Administrative Hearing") before Martin, the Racing Board's hearing officer.[4] Hearing Report

---

**3.** Section 4022.13, "Imposition of Civil Penalty," provides that:

> In place of or in addition to the actions recited in section 4022.12 of this Part [regarding suspension of license], the steward of the board is hereby authorized to impose a civil penalty in an amount not to exceed $5,000 for each violation of any of the sections of this Subchapter or for any action detrimental to the best interests of racing generally; and each day upon which such violation continues may be considered by the steward as a separate violation in assessing the amount of such civil penalty. Before imposing such civil penalty, the steward of the board shall give the other two stewards of the meeting a reasonable opportunity to submit recommendations relative to such penalty.

9 NYCRR § 4022.13.

Section 4022.13 is one of the "rules and regulations" promulgated pursuant to the

New York Racing, Pari–Mutuel Wagering and Breeding Law ("RWBL"). *See, e.g., Saumell v. New York Racing Ass'n, Inc.*, 58 N.Y.2d 231, 460 N.Y.S.2d 763, 772, 447 N.E.2d 706 (1983) ("Pursuant to its authority, the Board has promulgated regulations ... empowering the Board's individual stewards to exclude or suspend persons from track grounds.") (citing 9 NYCRR § 4022.12) (Cooke, C.J., Dissenting). Section 243 of the RWBL authorizes the Racing Board "to impose civil penalties upon any such licensee for a violation of any provision of sections two hundred twenty-two through seven hundred five of this chapter or the rules and regulations promulgated pursuant thereto, not exceeding five thousand dollars for each violation." RWBL § 243 (McKinney 2000).

**4.** Section 4022.14, "Appeal from Penalty," provides:

> Any person so penalized [under Section 4022.13] shall have the right to appeal to

at 1. Perez did not testify at the Administrative Hearing but was represented by counsel who actively participated by cross-examining the (six) witnesses who did testify and by arguing that Plaintiff's conduct at the August 31, 2000 meeting was protected by the First and Fourteenth Amendments.[5] Tr. at 145–56. In a seven page written Hearing Report, dated April 26, 2001, Martin rejected Plaintiff's First Amendment argument, finding that in "this instance" Section 4022.13 "as applied is not overly broad or vague." Hearing Report at 6. Martin also concluded that Plaintiff's behavior "disrupted" the Steward's meeting; that Perez had lost his temper; "shouted and used profanity;" threatened to choke one of the officials at the meeting; "pounded the desk;" and called the Racing Association Steward "a profane name and, was aware that a continuation of his behavior would result in a sanction," but "would not discontinue his disruptive behavior." Hearing Report at 3–4. Martin also found that Plaintiff's actions "were detrimental to the best interests of racing generally, in that he demonstrated disrespect to the stewards and disrupted the stewards' meeting, to the point that made further investigation into his complaint impossible." Hearing Report at 4. Martin recommended that the full Racing Board uphold a fine in the amount of $1,000. Hearing Report at 7.

At a (further) hearing held on May 1, 2001, the full Racing Board approved Martin's recommendation to uphold a fine, but ordered that a $3,000 fine be imposed (as had been recommended by the Racing Board Steward Donofrio), "based upon the aggravated, persistent nature of the misconduct and the need to foster respect for racing officials." *In the Matter of Robert Perez*, NYRA No. 00–45, Racing Board Findings and Order, dated May 1, 2001, attached as Exhibit C to Levine Declaration ("Racing Board Order").[6]

### III. Standard of Review

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matters that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-

---

the commission by filing with the commission within 30 days after the imposition of such civil penalty, a written notice of such appeal; and the commission in determining the appeal may increase or decrease the amount of such civil penalty, or it may suspend or revoke or otherwise act with respect to the license or the licensing of the appellant; and the determination of the commission on such appeal shall be final. 9 NYCRR § 4022.14.

5. Present at the Administrative Hearing were Perez, Joseph Faraldo, counsel to Perez, and Rick Goodell, counsel to the Racing Board. Tr. at 2. Perez was provided with a "Notice of

Hearing," which was entered into evidence, along with proof of service, a copy of the Order of Reference, and a copy of Perez' "history" with the Racing Board. Tr. at 4. During his closing arguments, Plaintiff's counsel stated that "this [hearing] seems to be a First Amendment case," Tr. at 145, and that the "best interests of racing" could not "sustain constitutional muster." Tr. at 154.

6. The Racing Board also determined that the $3,000 fine could be reduced to $1,250 if Perez "demonstrates his remorse and desire not to repeat such conduct, by an apology to the Stewards." Racing Board Order at 1.

moving party which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)); *accord Hotel Employees & Restaurant Employees Union v. New York Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir.2002). The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "The trial court must, in considering the motion, view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

## III. Analysis

The crux of Plaintiff's claim is that Section 4022.13, which allows the Racing Board Steward to impose a fine of up to $5,000 for "any action detrimental to the best interests of racing," is unconstitutional as applied to his behavior at the August 31, 2000 meeting. *See* Pl. Mem. at 1 ("**the rule pursuant to which defendants seek to penalize [Perez] is unconstitutional as applied to him under the facts herein**") (emphasis added). Plaintiff also contends that Section 4022.13 is unconstitutionally vague, *see* Amended Complaint at ¶ 26 ("9 NYCRR § 4022.13 is . . . unconsti-

tutionally vague"), and that the Racing Board is "without [statutory] authority to levy a monetary penalty against [him]." Pl. Mem. at 1. Defendants argue: (i) that Plaintiff's claims are premised upon the mistaken contention that, although a licensee of the Racing Board, "he has an inviolable First Amendment right to impede a Stewards' meeting by screaming obscenities at them," *see* Def. Mem. at 9; (ii) that Section 4022.13 is not overly broad or unconstitutionally vague, *see id.;* and (iii) that the Racing Board was clearly authorized to impose of a fine against Plaintiff for "for any action detrimental to the best interests of racing." *See* Def. Supp. at 3 ("Since plaintiff is already a licensed by the Board as a participant under RWBL § 213, the Board already has the power under RWBL § 243 to impose a monetary penalty on him.").[7]

## A. "As–Applied" Challenge

■ Plaintiff contends that "[t]here can be no doubt that Mr. Perez was engaging in activity protected by the first amendment when, in a loud voice, he directed epithets at the other participants in the [August 31, 2000] meeting," Pl. Mem. at 4, and that the Defendants could not penalize him for the content of his speech unless it was "necessary to serve a compelling state interest, and . . . narrowly tailored to achieve that end." Pl. Mem. at 12 (quoting *Distribution Sys. of Am., Inc. v. Village of Old Westbury,* 862 F.Supp. 950, 957 (E.D.N.Y.1994)). Defendants respond, *inter alia,* that the fine was imposed within a framework "analogous to the supervision of . . . employees by a public employer," Def. Mem. at 15, and it was a constitution-

---

**7.** Defendants also argue that Plaintiff's claim for monetary damages must fail because they are protected by qualified immunity. Def. Mem. at 7–8. Plaintiff does not, however, appear to seek monetary damages. *See New York State Assoc. of Realtors v. Shaffer,* 833 F.Supp. 165, 187 (E.D.N.Y.) ("Here, the plaintiff is not seeking monetary damages and therefore the defense of qualified immunity is not available to the defendant."), *rev'd on other grounds,* 27 F.3d 834 (1994).

ally permissible action because Plaintiff was not discussing a matter of public concern and because the Stewards reasonably believed that "the potential disruption would outweigh the First Amendment value of that speech." Def. Mem. at 16; *see also* Def. Mem. at 14 ("For Stewards' meetings, which are not public forums, there is no constitutional requirement that compels the Government to conduct its business in the midst of abusive, disruptive, behavior.").

"Under our Constitutional doctrines, few values are more carefully and thoroughly protected than the citizen's right to speak his mind on matters of public concern without interference by government. Nonetheless, the right is not absolute. At times, the right of free speech conflicts with other important governmental values, posing the problem which interest should prevail." *Pappas v. Giuliani*, 290 F.3d 143, 146 (2d Cir.2002). Where, on the facts presented here, the Plaintiff is a licensee in "an industry closely regulated by defendants," Pl. Mem. 12 n. 4, disruptive and threatening behavior need not be countenanced. *See, e.g., Heil v. Santoro,*

147 F.3d 103, 109 (2d Cir.1998) ("the government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities, and can persuade the court that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech") (internal citations omitted).

In a case (very) similar to the case at bar, *LeRoy v. Illinois Racing Bd.*, 39 F.3d 711 (7th Cir.1994), the United States Court of Appeals for the Seventh Circuit upheld Rule 20.1, established by the Illinois Racing Board ("IRB") and which prohibited "improper language" or "improper conduct" by licensees towards regulators, in the face of a claim that Rule 20.1 was unconstitutionally "vague and overbroad." 39 F.3d at 715.[8] The plaintiff in *LeRoy* was a licensed owner, driver and trainer of standardbred race horses who was suspended and fined $500 for displaying "improper conduct by using offensive and profane language towards an Illinois Racing Board official."[9] *LeRoy v. Illinois Racing Bd.*, 89–C–3433, 1990 WL 7072 at *4 (N.D.Ill. Jan.18, 1990). The Seventh Cir-

---

8. Under Rule 20.1 of the IRB:

   No owner, trainer, driver, attendant of a horse, or any other person shall use improper language to an official, or be guilty of any improper conduct toward such officers or judges or persons serving under their orders, such improper language or conduct having reference to the administration of the course, or of any race thereon. 11 Ill. Admin. Code 1320.10.

9. LeRoy was initially fined and suspended by the IRB after a (prohibited) hypodermic needle was discovered in his pickup truck. *LeRoy*, 39 F.3d at 712. That suspension "barred LeRoy from entering any racetrack in Illinois. He did not comply, was caught, and was suspended for 30 additional days. In the process, he swore at an official of the Board, which led to a fine plus a suspension." *Id.* (citation omitted). Thereafter, a "disciplinary

board found that, while on probation, LeRoy had used 'threatening and profane language towards the Association Steward at Maywood Park.'" *Id.* Although LeRoy (apparently) did not appeal his suspension, IRB rules provide that "to the extent that a party believes that his license has been unfairly suspended or revoked due to an alleged violation of Rule 20.1, he may request a hearing in front of the IRB within five days of receiving notice of the suspension of his license." *LeRoy v. Illinois Racing Bd.*, 89–C–3433, 1992 WL 168528 at *4 (N.D.Ill. July 13, 1992). Instead, LeRoy filed suit in federal district court under 42 U.S.C. § 1983, arguing, among other things, that Rule 20.1 was unconstitutionally "vague and overbroad." *LeRoy*, 39 F.3d at 712, 715. The district court "issued a series of opinions" granting "defendants judgment on the pleadings on one issue after another, finally dismissing the suit altogether," in 1993. *Id.* at 712–13.

cuit Court of Appeals, upholding the district court's dismissal of the plaintiff's complaint, found that Rule 20.1 was not overbroad because there was no indication that a "significant fraction of its applications would forbid or deter protected speech." *LeRoy*, 39 F.3d at 715 ("Whatever deficiencies Rule 20.1 may display in application to others are not salient, for the rule is not 'substantially overbroad' in the sense that a significant fraction of its applications would forbid or deter protected speech.") (citation omitted). The court of appeals noted that Rule 20.1 was only "addressed to ... licensees, [and] governs only their relations with regulators concerning 'the administration of the course, or of any race thereon' ...." *Id.* Such a relationship is akin to the State's relationship with public employees. *See LeRoy*, 1990 WL 7072 at *4 ("There is no reason apparent to the Court why the disciplinary concerns governing the public employment cases would not be applicable to the state's interests in regulating the behavior of its licensed horsemen.").[10]

As in the case of Illinois, New York State has vested its Racing Board with "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state and over the corporations, associations, and persons engaged therein." RWBL § 101; *see also Lasky v. Van Lindt*, 115 Misc.2d 259, 453 N.Y.S.2d 983,

986 (1982) ("It is important to remember that as a sporting event, horse racing occupies a unique position among the professional sports activities which take place in this state; it is the only sport in which wagering is legal. As such, the state has a vital interest in protecting the integrity of the sport and preventing any potential for abuse.").

In applying the *Pickering* balancing test, a court must first determine whether an employee's speech touches on a matter of public concern. *Pappas*, 290 F.3d at 146. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 106 (2d Cir.2001) ("If every speech-related personnel decision were subjected to 'intrusive oversight by the judiciary in the name of the First Amendment,' effective government administration would be threatened and, in turn, the efficient provision of services and benefits would be jeopardized."). And, even if an employee's speech touches on a matter of public concern, (in some circumstances) the State may, neverthe-

---

**10.** In the public employment context relied upon in *LeRoy*, "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," must be struck. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). "This weighing, commonly referred to as the *Pickering* balancing test, is necessitated by the State's dual role as employer and sovereign. As sovereign, a State's ability to regulate speech is severely limited by the First

Amendment, which protects the free and open discourse concerning public affairs that 'is the essence of self-government.'" *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir.1999) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125, (1964)). "Yet, as an employer charged with providing such essential services as public safety and education, the Constitution provides a State with greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions." *Lewis*, 165 F.3d at 161.

less, impose restrictions on that speech if it can demonstrate "that the speech threatens to interfere with government operations." *Lewis*, 165 F.3d at 162. "For example, the *Pickering* balance is more likely to favor the government when an employee directly confronts his supervisor with objectionable language than when an employee engages in equivalent speech on his own time and not in front of co-workers." *Id.*[11]

Plaintiff acknowledges that he "is a participant in an industry closely regulated by defendants." Pl. Mem. at 12 n. 4. And it cannot reasonably be said that he was penalized for commenting on a matter of public concern. *See* Def. Mem. at 15. Indeed, the (undisputed) record established that Perez was fined for disrupting a meeting which he requested and for "showing of total disrespect," to the Stewards. Tr. at 40. (The fine was not imposed "because Mr. Perez had the same opinions that he had when he came in the room," but "because just kept showing total disrespect."). *See, e.g., Mishk v. Destefano*, 5 F.Supp.2d 194, 200 (S.D.N.Y.1998) ("The fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community."); *Le-Roy*, 1992 WL 168528 at *3 ("If plaintiff registered a purely personal complaint as to the disciplinary actions taken against him, the tenets of the first amendment may not be at issue.").

Even if Plaintiff's complaint at the August 31, 2000 meeting had merit, his "harsh and vulgar" speech and behavior interfered with and disrupted the meeting—precluding the airing of his alleged grievance. Perez' outburst undermined the Stewards' "ability to perform [their] legitimate functions." *Lewis*, 165 F.3d at 161. Indeed, one of the Stewards testified that "if the Stewards don't have respect they certainly couldn't handle the racetrack and what goes on and licensees. And we were there to hear his complaint, not to be abused." Tr. at 22. Plaintiff's behavior:(i) "disrupted" the meeting, Hearing Report at 3; (ii) prevented the Stewards from considering his complaint, Hearing Report at 4; (iii) disturbed employees in the area, Tr. at 102; and (iv) brought a security guard running from the jockey's room, Tr. at 143. *See, e.g., Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir.1995) ("defendants were motivated by a reasonable prediction of disruption, they did not demote him for an improper retaliatory motive .... as a matter of law, this potential disruptiveness was enough to outweigh whatever First Amendment value [plaintiff's] speech might have had").

### B. Facial Overbreadth Challenge

■ While Plaintiff alleges that Section 4022.13 is also "void ... on its face ... in that it is overbroad," Amended Complaint at ¶ 26, Defendants correctly point out that

---

**11.** In addition, where the State regulates speech in a non-public forum, such as the Stewards' meeting in the case at bar, the government may impose restrictions which are " 'reasonably related' to maintaining the environment that the government has deliberately created." *Hotel Employees*, 311 F.3d at 554 (2d Cir.2002); *see also Morris v. Off-Track Betting Corp.*, No. 92–CV–0320E(M), 1994 WL 721374 at *4 (W.D.N.Y. Dec.29, 1994) (finding that an Off–Track Betting parlor was not a public forum, and that "the defendants had the power to preserve the property under their control for the use to which it is lawfully dedicated"); *Devine v. Village of Port Jefferson*, 849 F.Supp. 185, 190 (E.D.N.Y.1994) ("[T]he Mayor's action was in response to Devine's disruptive behavior as opposed to the content or viewpoint of his speech .... the Village had a significant interest in conducting its meeting in an orderly and effective fashion. Moreover, any threat of arrest was a reasonable response to Devine's failure to follow the Mayor's directive and cease interrupting the public meeting.").

"the Rule [Section 4022.13] on its face does not purport to restrict speech ... and it is not the duty of the court to imagine remote ways in which a rule might restrict speech." Pl. Reply at 3.

A facial overbreadth challenge is a "departure from traditional rules of standing" that allows a plaintiff to assert the constitutional rights of third parties. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *see also Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 336 n. 235 (S.D.N.Y.2000) ("The overbreadth doctrine ... enables litigants to challenge a statute not merely because their own First Amendment rights are violated, but because the statute may cause others to abstain from constitutionally protected expression.") "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has only been employed as a last resort." *Broadrick*, 458 at 613, 93 S.Ct. 2908.[12]

Clearly, the rights Plaintiff is seeking to vindicate are his own. In his opposition to Defendants' motion. Plaintiff argues that Section 4022.13 is unconstitutional as it applies to his unique circumstances. Perez does not identify, or seek to vindicate, the rights of third parties. *See, e.g.,* Pl. Mem. at 1 ("the rule pursuant to which defendants seek to penalize him is unconstitutional as applied to him under the facts herein because it is both overbroad and void for vagueness"). Plaintiff "makes no attempt to assert the rights of third parties not before us. Instead, his claim, made quite explicit by his briefs, is that the statute is overbroad precisely because it applies to him—the plaintiff who is before us." *Moore v. City of Kilgore*, 877

F.2d 364, 390 (5th Cir.1989); *see also; Reimerdes*, 111 F.Supp.2d at 336 n. 235 ("This aspect of defendants' argument, which in any case is an overstatement, therefore does not refer to overbreadth in the sense relevant here."); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 595 (2d Cir.1993) ("**Because the challenges described above are not facial, we will treat them as 'as applied.'**") (emphasis added). There are no grounds for a facial overbreadth challenge here. *See, e.g., Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) ("This is not, however, an appropriate case to entertain a facial challenge based on overbreadth. For we have found nothing in the record to indicate that the ordinance will have any different impact on any third parties' interests in free speech ...."); *Krukowski v. Swords*, 15 F.Supp.2d 188, 197 n. 17 (D.Conn.1998) ("courts will not entertain a facial overbreadth challenge 'where the parties challenging the statute are those who desire to engage in protected speech that the statute purports to punish'") (citation omitted). Were the Court to consider a facial overbreadth challenge to Section 4022.13 on these facts, it would soon be "immersed in inquiries so speculative as to border upon the metaphysical." *Moore*, 877 F.2d at 390.

## C. Vagueness Challenge

■ Plaintiff argues that Section 4022.13 "as applied in this particular situation" is void for vagueness because "no matter how objectionable plaintiff's speech might have been, defendants were incor-

---

**12.** The United States Supreme Court has "insisted that the overbreadth involved be 'substantial' before the statue involved will be invalidated on its face." *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *see also Sanitation & Recycling* *Indus. v. City of N.Y.*, 107 F.3d 985, 997 (2d Cir.1997) ("For an overbreadth challenge to succeed, it must be demonstrated that the government has significantly interfered with the right of individuals to associate together.").

rect in finding that it was somehow detrimental to the best interests of racing generally." Pl. Mem. at 11.[13] Defendants argue that "an ordinary person exercising common sense can anticipate that he would breach the 'usages of the turf' and act contrary to 'the best interests of racing' if he spends several minutes during an official Stewards' meeting shouting that the Stewards are 'cocksuckers' and refusing to comply with reasonable requests." Def. Mem. at 18.

"The Due Process Clause requires that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited,' and to 'provide explicit standards for those who apply them.'" *General Media Communications v. Cohen*, 131 F.3d 273, 286 (2d Cir.1997) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). The level of specificity required "depends in part on the nature of the enactment at issue." *Hoffman Estates v. Flipside*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Courts are generally more tolerant of "enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99, 102 S.Ct. 1186. "At the same time, statutes that implicate constitutionally protected rights, including the freedoms protected by the First Amendment, are subject to 'more stringent' vagueness analysis." *General Media*, 131 F.3d at 286 (quoting *Hoffman*, 455 U.S. at 499, 102 S.Ct. 1186).

Section 4022.13 is not impermissibly vague simply because it "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Hoffman*, 455 U.S. at 495 n. 7, 102 S.Ct.

1186. In *LeRoy*, the Seventh Circuit held that Rule 20.1—prohibiting "improper language" and "improper conduct"—was not unconstitutionally vague. 39 F.3d at 714. The court found that the Illinois racing industry had "much in common with civil service laws, which despite their many vague terms were sustained in *Broadrick v. Oklahoma*, 413 U.S. 601, 607–15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and *CSC v. Letter Carriers*, 413 U.S. 548, 568–81, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), and with the Uniform Code of Military Justice, whose prohibitions against 'conduct unbecoming an officer and a gentleman' and 'disorders and neglects to the prejudice of good order' met approval in *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)." *LeRoy*, 39 F.3d at 714 (citations shortened).

The prohibition in Section 4022.13 against "action detrimental to the best interests of racing" is equally as definite as lawful prohibitions against "conduct unbecoming an officer and a gentleman" or use of "improper language,"—and as IRB Rule 20.1 in *LeRoy*. *See id.; see also Padberg v. McGrath–McKechnie*, 203 F.Supp.2d 261, 287 (E.D.N.Y.2002) (rule providing that "a taxicab driver, shall not commit or attempt to commit ... any willful act of omission or commission which is against the best interests of the public" not unconstitutionally vague as applied to drivers who impermissibly refuse service). "While these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see*

---

**13.** Plaintiff also argues that "the real purpose" Section 4022.13 is to punish activities that "impugn the integrity or endanger the financial structure of thoroughbred racing," Pl. Mem. at 11, and that the Section 4022.13 "provides no guidance to those charged with enforcing it." Pl. Mem. at 7.

*also* *Hadges v. Corbisiero,* 739 F.Supp. 792, 793 (S.D.N.Y.1989) (finding that 9 NYCRR § 4119.9, which prohibits a licensee of the New York State Harness Racing Commission from committing any act that "constitutes conduct detrimental to the best interests of racing," was not unconstitutionally vague as applied to a licensee who instructed someone to bet on a horse other than his own—"plaintiff, as an experienced horseman, needs no clarification of Rule 4119.9(a)"); *Fox v. Philadelphia Turf Club, Inc.,* Civ. A. No. 86–6346, 1987 WL 17751 at *3 (E.D.Pa. Sept. 30, 1987) (holding that a rule of the Pennsylvania Racing Board that allowed the Board to "suspend any person who has acted to the detriment of racing" was constitutional and no more vague than laws prohibiting "disturbing the peace" or "obnoxious behavior on the grounds of association," which were standards that "a person of ordinary intelligence can understand").

Section 4022.13 pertains to the conduct of racing "licensees," and "is administered by an agency that, through a series of decisions, can add detail." [14] *LeRoy,* 39 F.3d at 715. And, its implementation is effected through a series of administrative hearings and appeals. *See Ward,* 491 U.S. at 795–96, 109 S.Ct. 2746 ("Administrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis, for '[i]n evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered.' "); *see also Fox,* 1987 WL 17751 at *3 ("These sections which provide for appeals will ensure that the Board properly and constitutionally exercises its discretionary power."). At the Administrative Hearing, Martin concluded that the "best interests of racing" was not overly vague in Plaintiff's case because "[t]here can be no misunderstanding by anyone that engaging in conduct that would impede the investigation of the Stewards would be 'detrimental to the best interests of racing generally.' " Hearing Report at 6.[15]

### D. Authority to Impose Fine

Plaintiff argues that his fine should be overturned because "Defendants were completely without power to levy a fine upon Mr. Perez ... defendants [including the Racing Board] were acting beyond the scope of their authority." Pl. Mem. at 12–13. Defendants' reply that the Racing Board clearly has statutory authority to impose a fine on a licensee such as Perez

---

14. "[O]ther licensees who have been abusive of the Stewards" have received penalties in the form of monetary fines. Tr. at 41–42. E.g., Donofrio testified that he imposed a fine on a jockey for displaying "temper toward a racing official." Tr. at 42. "He was raising his voice and screaming at us. We were trying to listen to his complaint." Tr. at 43. That jockey was fined for "language which was demonstrative of a temper," but did not use words like "fuck you, cocksucker." Tr. at 44. Donofrio also described fining a licensee for raising "his voice in front of the press .... Not hollering. He just got very sarcastic on the phone, questioning a judgment call." Tr. at 45.

15. Prior to the (initial) fine Perez was warned about his language and knew that he would be fined for his behavior. Tr. at 33; *see also* Tr. at 101 ("if you keep yelling and you keep cursing, I'm going to fine you"). Plaintiff continued to swear and yell at the Stewards, telling Hicks: to "make it a thousand;" Tr. at 57; "that's a thousand, make it two thousand," Tr. at 35; "make it ten thousand I don't care." Tr. 35; *see also Janusaitis v. Middlebury Volunteer Fire Dep't,* 607 F.2d 17, 27 (2d Cir.1979) (phrase "unbecoming conduct detrimental to the welfare or good name of the Department" not unconstitutionally vague where "appellant received specific warning from the Chief before he embarked upon further conduct that he must have realized would have been considered contumacious of expected decorum").

under Section 243 of the RWBL and Section 4022.13 promulgated thereunder. Def. Supp. at 3 ("Since plaintiff is already licensed by the Board as a participant under RWBL § 213, the Board already has the power under RWBL § 243 to impose a monetary penalty on him.").

Defendants are correct. Section 243 of the New York State Racing, Pari–Mutuel Wagering and Breeding Law explicitly provides that: "the state racing and wagering board is hereby authorized to impose civil penalties upon any such licensee for a violation of any provision of sections two hundred twenty-two through seven hundred five of this chapter or the rules and regulations promulgated pursuant thereto, not exceeding five thousand dollars for each violation . . . ." RWBL § 243.[16]

Plaintiff belatedly argues in his Supplemental Memorandum of February 14, 2003, that Section 243 is "extremely, vague, overbroad and illogical statute." Pl. Supp. at 1. Plaintiff's eleventh hour argument is rejected for the reasons (already) discussed throughout this Order.

### E. Permanent Injunction

Because Plaintiff's underlying claim is denied he is not entitled to a permanent injunction. *See New York State Society of Certified Public Accountants v. Eric Louis Assocs.*, 79 F.Supp.2d 331, 340 (S.D.N.Y. 1999) ("the standard for granting a permanent injunction is actual success on the merits").

**16.** Plaintiff bases his argument on the fact that in the Spring of 2002, the New York State Assembly was considering an amendment to the Racing, Pari–Mutuel Wagering and Breeding Law. Pl. Mem. at 13 (citing New York State Assembly Memorandum of Introduction, A. 8578, 225th Sess., 2001–2002 Reg. Sess.). Defendants argue (convincingly) that the proposed amendment would allow

### IV. Decision and Order

For the foregoing reasons, the Defendants' motion for summary judgment is granted in its entirety and the case is dismissed. The Clerk of the Court is respectfully directed to close this case.

the Racing Board to impose a fine on a "participant" in thoroughbred racing "for a violation of any provision of this chapter or the rules promulgated by the Board pursuant thereto," whether the participant is "licensed by the Board or not." New York State Assembly Bill, A. 8578, 225th Sess., 2001–2002 Reg. Sess.