Robert PEREZ, Plaintiff–Appellant,

v.

Michael J. HOBLOCK, Jr.; Cheryl Buley; Joseph P. Neglia; Edward J. Martin, Defendants–Appellees.

Docket No. 03–0078.

United States Court of Appeals, Second Circuit.

Argued: Nov. 17, 2003.

Decided: May 18, 2004.

Alan D. Levine (Joseph A. Faraldo, on the brief), Kew Gardens, New York, for Plaintiff–Appellant.

Michelle Aronowitz, Deputy Solicitor General (Shaifali Puri, Deputy Solicitor General, argued; Marion R. Buchbinder, Senior Assistant Solicitor General, of counsel; Eliot Spitzer, Attorney General of the State of New York, Caitlin J. Halligan, Solicitor General, on the brief), New York, New York, for Defendants–Appellees.

Before: WALKER, Chief Judge, CALABRESI and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff–Appellant Robert Perez appeals from a judgment entered March 5, 2003 by the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*), granting summary judgment in favor of Defendants–Appellees Michael J. Hoblock, Jr., Chairman of the New York State Racing and Wagering Board ("Racing Board" or "Board"), Cheryl Buley, member of the Board, Joseph P. Neglia, member of the Board, and Edward J. Martin, the Board's Executive Director. The Racing Board is an administrative agency of the State of New York with "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state and over the corporations, associations, and persons engaged therein." N.Y. RAC. PARI–MUT. WAG. & BREED. LAW § 101(1) (McKinney 2000); *see also Capital Dist. Reg'l Off–Track Betting Corp. v. New York State Racing & Wagering Bd.*, 54 N.Y.2d 154, 157, 445 N.Y.S.2d 55, 429 N.E.2d 733 (1981). Perez is licensed by the Board as an owner of thoroughbred horses.

Perez brought this suit after being fined by the Racing Board for his conduct at an official Stewards' meeting that was held at Perez's request. On appeal, Perez argues that the imposition of the fine, pursuant to N.Y. COMP. CODES R. & REGS. tit. 9, § 4022.13 (2000), effected an unconstitutional restriction on his speech in violation of the First Amendment. He also claims that the regulation, which penalizes "any action detrimental to the best interest of racing generally," *see id.*, is void for vagueness as applied to him. As to Perez's First Amendment claim, we find that the meeting in question was a nonpublic forum

and that the restrictions imposed on Perez by the regulation are, therefore, constitutionally permissible because the regulation is both reasonable and viewpoint neutral. As to Perez's void-for-vagueness challenge, we hold that the regulation is not unconstitutionally vague as applied to Perez because Perez's disruptive conduct clearly fell within the ambit of the regulation. Accordingly, we affirm.

## BACKGROUND

The events relevant to this case date to August 2000, when Perez requested a meeting with Carmine Donofrio, Dave Hicks and William Hill, the Stewards in charge of the Racing Board's annual meeting.[1] Perez sought an opportunity to present his complaint that Mike Lakow, the Racing Secretary of the New York Racing Association,[2] was acting unfairly in performing his job of selecting the number of horses to run in particular races.

### A. The August 31, 2000 Meeting

On August 31, 2000, the Stewards held a meeting with Lakow and Perez to address Perez's allegations. During the meeting, Perez accused Lakow of "fixing" certain races by manipulating the number of horses in those races in order to favor some horse owners over others. Shortly after the meeting began, Perez became upset. His agitation grew into outbursts that included pounding on the desk, shouting vulgarities, and even threatening to "choke" or "strangle" Lakow.[3] The outbursts were so pronounced that one employee working in a different room testified that she could hear the commotion—including shouting and banging on tables—and commented to her coworkers, "God, what the heck is going on back there?"

To curb Perez's escalating temper, Hicks, the Steward who had called the meeting at Perez's request, attempted to escort Perez outside the meeting room so that Perez could settle down. Perez refused to leave the room, however, and instead continued his tirade. The Stewards concluded that because of Perez's behavior—including his "hollering, . . . shouting, . . . cursing, and . . . banging on the desk"—the meeting could not continue. As Lakow and the Stewards attempted to exit the meeting, Perez continued ranting and cursing. After Hicks warned Perez to "watch his language," Perez proceeded to call both Hicks and Lakow a "cocksucker." At that point, Hicks fined Perez $500.

---

1. There are three Stewards designated to supervise each race meeting. N.Y. COMP. CODES R. & REGS. tit. 9, § 4022.3 (2000). The Stewards have the authority, *inter alia,* to review complaints against racing officials, *id.* § 4022.7, "to vary all arrangements for the conduct of the [race] meeting," *id.* § 4022.8, to supervise race entries and declarations, *id.* § 4022.10, "to regulate and control the conduct of all officials and of all owners, trainers, jockeys, grooms and other persons attendant on horses," *id.* § 4022.11, and to exclude, suspend or fine any person who has violated the Racing Board's regulations or who has been involved in "any action detrimental to the best interests of racing generally," *id.* §§ 4022.12, 4022.13.

2. We note, as the District Court did, that "[t]he Racing Association . . . is a private, non-profit organization that owns and operates the three largest racetracks in New York—Aqueduct, Belmont Park and Saratoga." *Perez v. Hoblock,* 248 F.Supp.2d 189, 191 n. 2 (S.D.N.Y.2002) (citing *Jacobson v. New York Racing Ass'n, Inc.,* 33 N.Y.2d 144, 147, 350 N.Y.S.2d 639, 305 N.E.2d 765 (1973)). The Racing Board has jurisdiction over the Racing Association. *See* N.Y. RAC. PARI–MUT. WAG. & BREED. LAW § 101(1) (McKinney 2000).

3. Lakow and Donofrio testified that they did not believe that Perez actually intended to choke Lakow. Hicks, however, testified that Lakow was "scared" and "didn't know what was going to happen."

Perez taunted Hicks to "make it a thousand" and proceeded to curse again. Hicks obliged and raised the fine to $1,000. This escalation continued until Hicks reached the regulation's prescribed maximum fine of $5,000. Perez challenged Hicks to "make it ten," but Hicks explained that he couldn't go that far. By that time, a security guard—who had heard the commotion from a room at least 50 feet away—arrived. Perez left the scene.

After Perez departed, the Stewards discussed the matter, agreed that a fine was appropriate under the regulation and decided to lower Perez's fine to $3,000. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 4022.13 (2000) (directing that before a penalty is imposed, "the steward of the board shall give the other two stewards of the meeting a reasonable opportunity to submit recommendations relative to such penalty"). At the time of the incident, section 4022.13, one of the rules and regulations promulgated pursuant to New York's Racing, Pari–Mutuel Wagering and Breeding Law, provided that "the steward of the board is hereby authorized to impose a civil penalty in an amount not to exceed $5,000 for ... any action detrimental to the best interests of racing generally." The penalty notice provided to Perez stated that he was fined for his "display of temper towards the Stewards and the Racing Secretary on August 31, 2000."

## B. Perez's Administrative Appeal

After receiving the penalty notice, Perez appealed and was granted an administrative hearing by the Racing Board. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 4022.14 (2000) (setting forth appeal procedures). At the hearing, which was held on January 18, 2001, the Executive Director and Designated Hearing Officer rejected Perez's arguments predicated on the First and Fourteenth Amendments. The Hearing Officer found that the Stewards' meeting was "a non-public forum for the purpose of investigating a racing-related complaint" and that, therefore, Perez's conduct could be regulated "as long as the restrictions were not intended to suppress an expression that differed from the public officials' view."

With respect to the nature of Perez's complaint that Lakow was manipulating the size of the field to benefit certain owners, the Hearing Officer indicated that, "if valid, [the complaint] could affect the integrity of the sport." He found, however, that Perez's disruption of the meeting prevented the Stewards from investigating these serious allegations thoroughly. As a result, the Hearing Officer concluded that section 4022.13 was not unconstitutionally vague as applied to Perez's conduct, because "[Perez's] actions were detrimental to the best interests of racing generally, in that he demonstrated disrespect to the stewards and disrupted the stewards' meeting, ... ma[king] further investigation into his complaint impossible." Finally, the Hearing Officer recommended reducing Perez's fine from $3,000 to $1,000.

Although the Racing Board upheld the Hearing Officer's other findings, it did not accept his recommendation with respect to the amount of the fine. Instead, the Board affirmed the Stewards' imposition of a $3,000 fine, permitting Perez to pay a reduced fine ($1,250) only if he expressed remorse in an apology to the Stewards.

## C. Perez's Lawsuit

On June 19, 2001, Perez filed a complaint in the United States District Court for the Southern District of New York. Perez subsequently filed an amended complaint on July 11, 2001, pursuant to 42 U.S.C. § 1983, seeking: (i) a declaratory judgment finding section 4022.13 unconsti-

tutional, both facially and as applied; (ii) a permanent injunction barring the defendants from penalizing him for his behavior; and (iii) a declaratory judgment that the fine levied by defendants pursuant to section 4022.13 was an unconstitutional taking without due process of law.

By order dated February 28, 2002, the District Court granted defendants' summary judgment motion and dismissed the complaint. *Perez v. Hoblock*, 248 F.Supp.2d 189, 201 (S.D.N.Y.2002). Analogizing state-licensed horse owners to public employees, the court engaged in the balancing analysis for regulating public employee speech mandated by *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Perez*, 248 F.Supp.2d at 196–97. The District Court weighed Perez's interest in speaking on matters of public concern against the State's interest in promoting the efficiency of services performed by its employees. In so doing, the court found that Perez was not penalized for commenting on a matter of public concern, but rather for the abusive manner in which he behaved and that, in any event, the disruptiveness of Perez's conduct outweighed any First Amendment value his speech might have had. *Id.* at 197. The court alternatively observed that Perez's First Amendment claim failed because the Stewards' meeting was a nonpublic forum, and in such a forum, the State could impose restrictions that are reasonably related to maintaining order as long as those restrictions are viewpoint neutral. *Id.* at 197 n. 11. Finally, the court determined that section 4022.13 was neither overbroad nor unconstitutionally vague. *Id.* at 197–200. On March 20, 2003, Perez filed a timely notice of appeal.

## DISCUSSION

On this appeal, Perez challenges the District Court's granting of summary judgment on two principal grounds. He claims that the District Court applied the wrong standard in examining his First Amendment claim by analogizing him to a public employee. Perez also asserts that the District Court improperly held that section 4022.13 was not void for vagueness. He has, however, abandoned both his First Amendment overbreadth challenge to the regulation and his claim that the Racing Board lacks the statutory authority to impose fines on licensees. *See United States v. Quiroz*, 22 F.3d 489, 490–91 (2d Cir. 1994) (explaining that we deem an argument that is not raised on appeal to have been "abandoned").

We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 153, 157 L.Ed.2d 44 (Oct. 6, 2003).

## I. THE DISTRICT COURT PROPERLY DISMISSED PEREZ'S FIRST AMENDMENT CLAIM

Perez argued before the District Court that the imposition of the fine under section 4022.13 was an unconstitutional restriction on free speech. As articulated in his briefs (and advanced at oral argument), Perez's First Amendment arguments are wholly focused on the District Court's public-employee analysis. Perez has not addressed the government's contention, which we find persuasive, that the Stew-

ards' meeting was a nonpublic forum and that the restriction on Perez's speech was reasonable and viewpoint neutral.

## A. We Do Not Adopt the District Court's Public Employee Analogy

Because the District Court relied principally on its public-employee analogy (and the test set forth in *Pickering* ) in granting summary judgment to defendants, we think it important to clarify at the outset of our analysis that we are affirming the District Court decision on other grounds. The question of whether a state-licensee— in this case, a horse owner licensed by New York State—is properly analogized to a public employee for First Amendment purposes, *see Perez,* 248 F.Supp.2d at 197, is one that has not yet been resolved in this Circuit. While we recognize that other courts have treated certain state licensees as public employees in the First Amendment context, *see, e.g., Copsey v. Swearingen,* 36 F.3d 1336, 1343–44 (5th Cir.1994) (applying *Pickering* to First Amendment claims of state-licensed vendor); *Havekost v. United States Dep't of the Navy,* 925 F.2d 316, 318–20 (9th Cir. 1991) (analogizing state-licensed commissary bagger to public employee); *cf. LeRoy v. Illinois Racing Bd.,* No. 89 C 3433, 1990 WL 7072, at *4 (N.D. Ill. Jan 18, 1990) (observing that plaintiff's "status as a licensed horseman may more nearly place him [in] the category applicable to public employees than in the category of purely private citizens"), we find it unnecessary to reach this complicated issue— which would implicate a host of state licensees in other industries—where, as here, there is a more straightforward and well-settled basis for dismissing Perez's First Amendment claim.

## B. The August 31 Meeting Was a Nonpublic Forum

For First Amendment purposes, speech restrictions imposed on government-owned property "are analyzed under a 'forum-based' approach" that divides government property into three categories based on the physical characteristics of the forum in question, the nature of its use (including its location and purpose), and the governmental intent in constructing the space. *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation,* 311 F.3d 534, 544, 546–47 (2d Cir.2002) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992)); *Gen. Media Communications, Inc. v. Cohen,* 131 F.3d 273, 279 (2d Cir.1997), *cert. denied,* 524 U.S. 951, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998).

The first two types of fora are the "traditional" public forum, e.g., streets, sidewalks, parks, and other places which have "traditionally been available for public expression" and "the free exchange of ideas," and the "designated" public forum, which is a nonpublic forum that has been opened by the government for "all types of expressive activity." *Hotel Employees,* 311 F.3d at 544–45 (citations and internal quotation marks omitted). Most regulations of speech in both traditional public fora and designated public fora are subjected to the highest scrutiny—such restrictions "are permissible only if 'narrowly drawn to achieve a compelling [governmental] interest.'" *Gen. Media,* 131 F.3d at 278 (alteration in original) (quoting *Lee,* 505 U.S. at 678, 112 S.Ct. 2701).

All remaining public property falls into the third category of nonpublic fora, which is the category of most relevance to this case. A "nonpublic forum" is a "property that the government has not opened for expressive activity by members

of the public." *Hotel Employees,* 311 F.3d at 546 (including as examples of nonpublic fora, "airport terminals, military bases and restricted access military stores, jailhouse grounds, and the Meadowlands Sports Complex") (citations omitted). In a nonpublic forum, an individual's freedom of speech is "at its nadir." *Fighting Finest, Inc. v. Bratton,* 95 F.3d 224, 229 (2d Cir. 1996). Restrictions on speech in nonpublic fora are "subject only to the requirements of reasonableness and viewpoint neutrality." *Hotel Employees,* 311 F.3d at 546 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)).

■ Nowhere in Perez's briefs does he contest the assertion that the Stewards' meeting was a nonpublic forum, despite the fact that it was (i) the basis for the administrative ruling against him; (ii) noted as an alternative basis for the District Court's ruling, *Perez,* 248 F.Supp.2d at 197 n. 11; and (iii) the principal argument in the defendants' appellate brief. In fact, in his reply brief, Perez asserts that "it is not the place where he spoke that matters," and at oral argument, we understood him to acknowledge that the Stewards' meeting was not a public forum. Nevertheless, in the interest of completeness, we outline briefly why the Stewards' meeting is properly viewed as a nonpublic forum.

The meeting at issue was held in the private office of Steward David Hicks in a nonpublic area of the Saratoga racetrack, a government-controlled horse racing facility. The meeting had a narrow and limited purpose: to investigate the specific complaints made by Perez and Lakow. Attendance at this closed-door tribunal was limited—there is no suggestion that there was general access to the meeting. *See Arkansas Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 678–79, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) ("To create a

[designated public] forum ..., the government must intend to make the property 'generally available' to a class of speakers.... A designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers.") (citations omitted). Thus, consideration of the relevant factors confirms that the Stewards' meeting was a nonpublic forum. The State has broad latitude to regulate and restrict speech in a nonpublic forum, provided that the restrictions are reasonably related to maintaining order in the environment, and the restrictions are not based on the viewpoint expressed by the speaker. *Hotel Employees,* 311 F.3d at 554. We now turn attention to whether the Racing Board's restrictions on Perez's speech meet these criteria.

## C. The Fine Imposed on Perez Was Reasonable and Viewpoint Neutral

■ The Supreme Court has admonished that a restriction in a nonpublic forum need only be reasonable; it does not have to be the *most* or the *only* reasonable limitation. *Cornelius,* 473 U.S. at 808. The reasonableness of a restriction is "assessed in the light of the purpose of the forum and all the surrounding circumstances." *Id.* at 809, 105 S.Ct. 3439. "[I]n examining the compatibility between the prohibited speech and the particular forum, we ask whether the restrictions on speech are reasonably related to maintaining the environment that the government has deliberately created." *Hotel Employees,* 311 F.3d at 554 (citation and internal quotation marks omitted).

In the instant case, the purpose of the Stewards' meeting was to hear Perez's complaint that Lakow had "fixed" races by manipulating the number of entries to favor certain owners and to consider Lakow's response and counter-complaint

about Perez's prior conduct. The Racing Board's restrictions on Perez's speech were reasonably related to promoting the objective of the session convened—to investigate allegations of impropriety affecting the integrity of the race meeting—and to maintaining the professional atmosphere of the office. Perez's conduct and speech were abusive and disruptive to the tribunal.[4] He prevented the Stewards from performing their legitimate investigative function and he disturbed employees working in the area. When the Stewards' efforts to reason with Perez and to calm him down failed, they properly resorted to the imposition of the fine to limit the disruption he was causing.

Furthermore, despite his half-hearted arguments to the contrary, it is clear from the facts of this case that Perez was *not* penalized for expressing his views about the Racing Secretary. We agree with the District Court, *see Perez*, 248 F.Supp.2d at 197, that the record of what transpired at the Board's meeting reveals that Perez was fined because his extremely disruptive behavior prevented the Stewards from fully investigating his grievance against Lakow. The Board did not penalize Perez over a disagreement with his viewpoint, but rather because the abusive manner in which he expressed that viewpoint impeded the Stewards' function and thus, was "detrimental to the best interests of racing." Indeed, as the District Court observed, Perez's behavior was so outrageous that the Board was denied the opportunity even to *consider* his viewpoint. *Perez*, 248 F.Supp.2d at 197.

We find that the Stewards' meeting was a nonpublic forum and that the restriction

of Perez's speech at that meeting was both viewpoint neutral and reasonable in relation to the forum's function. As such, the application of section 4022.13 in this case was not an impermissible restriction of Perez's speech.

## II. PEREZ'S VAGUENESS CHALLENGE ALSO FAILS

Perez also contends that section 4022.13 is unconstitutionally vague as applied to him because the regulation's prohibition against "any action detrimental to the best interests of racing" is not specific or definite enough to capture his conduct. We reject Perez's vagueness arguments because we find that the language of the regulation clearly embraces his conduct. In addition, after the initial $500 fine was imposed, Perez was on explicit notice that his continued disruptive conduct would be fined.

### A. The Statute Clearly Proscribes Perez's Outrageous Behavior

The Due Process Clause requires "that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" *Gen. Media Communications*, 131 F.3d at 286 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); *see also Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (explaining that "the due process doctrine of vagueness.... incorporates notions of fair notice or warning [and] requires legislatures to set reason-

---

4. As the government notes, Perez's conduct was so egregious that, if he had behaved in that fashion in a public place, it might have qualified as disorderly conduct under the New York Penal Code. Under New York Penal Law § 240.20, "a person is guilty of disorder-

ly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof .... [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture." N.Y. PENAL LAW § 240.20(3) (McKinney 2000).

ably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement' "). We have clearly held, however, that a statute or regulation is not required to specify every prohibited act. *See Rock of Ages Corp. v. Sec'y of Labor,* 170 F.3d 148, 156 (2d Cir.1999) ("[R]egulations need not achieve 'meticulous specificity' and may instead embody 'flexibility and reasonable breadth.' " (quoting *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294)). Limitations inherent in the English language often prevent the drafting of statutes "both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Arnett v. Kennedy,* 416 U.S. 134, 159–60, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (quoting *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). Furthermore, the Supreme Court has expressed "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."[5] *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ The evaluation of whether section 4022.13 is vague as applied to Perez must be made with respect to Perez's actual conduct "and not with respect to hypothetical situations at the periphery of the [regulation's] scope or with respect to the conduct of other parties who might not be

forewarned by the broad language." *diLeo v. Greenfield,* 541 F.2d 949, 953 (2d Cir. 1976) (holding that statute that permitted termination of teachers for "due and sufficient cause" was not vague as applied); *see also United States v. Rybicki,* 354 F.3d 124, 129 (2d Cir.2003) (*in banc* ) (explaining that as-applied vagueness challenges involve examination of "the specific facts of the case at hand") (internal quotation marks omitted). Thus, although the prohibition against "any action detrimental to the best interests of racing" is admittedly flexible, and officials implementing this standard will undoubtedly exercise some discretion in interpreting and applying the regulation, our primary focus must be on whether the specific conduct at issue in this case falls with sufficient clarity within the ambit of the regulation. *See Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *Allen v. City of Greensboro, N.C.,* 452 F.2d 489, 491 (4th Cir.1971) ("While the argument that the regulation prohibiting conduct 'unbecoming an officer and a gentleman' is so vague as to provide no guidance to police officers in ascertaining the proper standard of conduct may well be valid under other circumstances," the argument is without merit where the plaintiff admitted making improper advances toward a young woman during an official investigation.).

In evaluating Perez's vagueness claim, we must consider the context in which the regulation was enforced, i.e., we must eval-

---

**5.** The Court has also recognized that a law or regulation that "threatens to inhibit the exercise of constitutionally protected rights," such as the right of free speech, will generally be subject to a more stringent vagueness test. *Village of Hoffman Estates v. Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). *But cf. Ward v. Rock Against Racism,* 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)

("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."). Having found, however, that the regulation was not applied in a manner that restricted Perez's right to free speech, *see supra* at [171–74], we need not apply the more rigorous test contemplated by the *Hoffman Estates* Court. *Cf. Arnett,* 416 U.S. at 162, 94 S.Ct. 1633.

uate Perez's underlying conduct by reference to the norms of the racing community. *See Parker,* 417 U.S. at 754, 94 S.Ct. 2547 (finding military's "conduct unbecoming" provision was not void for vagueness and noting that "further content may be supplied" to areas of uncertainty in the provision "by less formalized custom and usage"); *Rock of Ages,* 170 F.3d at 156 ("[R]egulations satisfy due process as long as a reasonably prudent person, *familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve,* has fair warning of what the regulations require.") (emphasis added); *San Filippo v. Bongiovanni,* 961 F.2d 1125, 1137 (3d Cir.) (finding that professor's as-applied vagueness challenge to regulation requiring that professors engage in "sound scholarship and competent teaching" failed because he knew that his conduct violated the mores of the academic community), *cert. denied,* 506 U.S. 908, 113 S.Ct. 305, 121 L.Ed.2d 228 (1992); *Finucan v. Maryland Bd. of Physician Quality Assurance,* 380 Md. 577, 846 A.2d 377, 386–87 (Md.2004) ("A statute prohibiting unprofessional conduct or immoral conduct, therefore, is not per se unconstitutionally vague; the term refers to conduct which breaches the rules or ethical code of a profession, or conduct which is unbecoming a member in good standing of a profession.") (internal quotation marks omitted); *Cranston v. City of Richmond,* 40 Cal.3d 755, 221 Cal.Rptr. 779, 710 P.2d 845, 851 (1985) (rejecting vagueness challenge to "conduct unbecoming" statute) ("[W]here the language of a statute fails to provide an objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the standard applies.").

We believe that there could be no misunderstanding by a veteran of the horse-racing industry like Perez—indeed, by any reasonable person—that banging on tables, repeatedly shouting obscenities and threatening to choke a racing official at an official Stewards' meeting would impede the Stewards' efforts to investigate Perez's very serious allegations—that Lakow was "fixing" races by manipulating race entries—and, thus, constitute conduct "detrimental to the best interests of racing generally." *See Hadges v. Corbisiero,* 739 F.Supp. 792, 793 (S.D.N.Y.1989) (holding that harness-racing regulation prohibiting "conduct detrimental to the best interests of racing" was not vague as applied to plaintiff who was an "experienced horseman" and should have known that passing wagering information was prohibited); *cf. LeRoy v. Illinois Racing Bd.,* 39 F.3d 711, 715 (7th Cir.1994) (observing that although regulation prohibiting "improper language" and "improper conduct" might be "seriously deficient" as a "norm addressed to the general public for the conduct of daily affairs," the regulation is not vague because, *inter alia,* it is addressed only to Illinois horse-racing licensees and is "administered by an agency that, through a series of decisions, can add details"), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). Although Perez attempts to cast his misconduct as merely the use of inappropriate language or some sort of mild decorum violation, the record does not support his characterization of events.[6] Each of the Stewards testified

**6.** Perez also asserts that, in harness racing rules, there exist prohibitions against improper or abusive language *in addition to* a prohibition against "conduct detrimental to the

best interests of racing." Analogizing the regulatory regime of harness racing to that of thoroughbred racing—the type of racing at issue in the instant case—Perez asserts that

that Perez's conduct was so disruptive that the meeting had to be adjourned. In light of Perez's outrageous behavior, which effectively precluded investigation of his very serious charges against Lakow, we have little difficulty finding, as the District Court and the Racing Board did, that Perez's actions, taken together, qualify as conduct "detrimental to the best interests of racing generally."

In addition, although section 4022.13 could be read to apply to a wide range of conduct (that is not at issue in this case) and despite the fact that the Stewards are invested with broad discretion under the regulation, we do not believe that these features provide a basis for a vagueness finding under the facts of this case. Section 4022.13 and the other regulations that outline the Stewards' authority do "channel the discretion" of the Stewards. *See Rybicki,* 354 F.3d at 143. Those regulations provide the Stewards with general oversight of all aspects of the race meetings at which they preside but they also provide more specific authority including, e.g., reviewing any complaints against officials, N.Y. COMP. CODES R. & REGS.

tit. 9, § 4022.7 (2000), supervising race entries, *id.* § 4022.10, and regulating the conduct of officials, owners, trainers, jockeys, grooms and other horsemen, *id.* § 4022.11. Here, Perez made serious allegations against Lakow that, if true, implicated one of the Stewards' core concerns: the integrity of the races being run at the meeting. Perez's disruptive conduct prevented the Stewards from investigating those weighty charges and their decision to fine him for his behavior does not represent an abuse of the discretion afforded the Stewards under the regulations.[7]

### B. Perez Was Warned that his Continued Misconduct Would Subject him to Fines

Because "[t]he vagueness doctrine is based on 'notions of fair notice or warning,'" the fact that Perez received explicit notice from the Stewards further undermines his vagueness challenge. *Janusaitis v. Middlebury Volunteer Fire Dep't,* 607 F.2d 17, 27 (2d Cir.1979); *see also Grayned,* 408 U.S. at 108, 92 S.Ct. 2294 (explaining that the Court's concern about

the absence of any prohibition against abusive language in the statutes or regulations governing thoroughbred racing indicates that abusive language is *not* conduct contemplated by the prohibition against conduct "detrimental to the best interests of racing." We find this *in pari materia* argument unpersuasive. The record is clear that Perez's conduct went far beyond merely using profanity or abusive language. His disruptive behavior at the meeting clearly prevented the Stewards from investigating claims that the integrity of the race meeting and the legitimacy of the races were being compromised by improper manipulation and "fixing" of races and, as such, can easily be viewed as conduct that was "detrimental to the best interests of racing." Furthermore, as the Supreme Court explained in *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the suggestion that regulation of thoroughbred racing must be identical to the provisions governing harness racing ignores the possibility that "the acute

problems attending harness racing" are distinct from those that might "plague the thoroughbred racing industry." *Id.* at 67, 99 S.Ct. 2642. Like the *Barry* Court, we will not assume that "the two industries should be identically regulated." *Id.*

7. We also note that the decision to fine Perez was reviewed by the Stewards after the meeting in question, considered by an administrative hearing officer after Perez appealed the fine, and affirmed by the Racing Board. *See Daly v. Commonwealth,* 38 Pa.Cmwlth. 77, 391 A.2d 1134, 1136 (Pa.Commw.Ct.1978) (declining to find that provision that empowered racing association to exclude persons whose presence would be "detrimental to the best interests of racing" afforded "impermissibly broad discretion" to racing officials in part because of administrative review process).

vague laws is that they do not give people a "reasonable opportunity to know what is prohibited" and "may trap the innocent by not providing fair warning"). In this case, it is undisputed that Perez was warned by the Stewards that his conduct would subject him to a fine.[8] *See Janusaitis,* 607 F.2d at 27 (rejecting vagueness challenge where plaintiff received a "specific warning" to cease his conduct and holding that plaintiff should have recognized that his actions would be viewed as a violation of the rule prohibiting "unbecoming conduct detrimental to the welfare or good name of the Department"); *In re Bithoney,* 486 F.2d 319, 324 (1st Cir.1973) (holding that because respondent received a direct and specific warning from the court that his "continued abuse of ... process" would constitute "conduct unbecoming a member of the bar," regulation under which respondent was penalized was not vague); *cf. diLeo,* 541 F.2d at 953 (finding that because teacher's "persistent pattern of neglecting his professional duties and harassing and humiliating students ... continued and worsened after [plaintiff] met with school administrators," plaintiff could not reasonably claim not to know that his behavior "constituted due and sufficient cause for dismissal").

According to Hicks, "[Perez] started [cursing] and I sa[id], [Perez], I'm going to

recommend a fine." In addition, an employee seated in an adjacent room who overheard the meeting reported, "I heard Mr. Hicks say to Mr. Perez, if you keep yelling and you keep cursing, I'm going to fine you." The District Court found, based on this testimony, that even "[p]rior to the (initial) fine Perez was warned about his language and knew that he would be fined for his behavior." *Perez,* 248 F.Supp.2d at 200 n. 15. The record, however, is not entirely clear about whether the initial $500 fine was imposed before or after Perez received warning that further cursing would subject him to sanction.

This issue need not be resolved because, at the very least, after the first $500 fine was imposed, Perez was on notice that he would be fined if he did not cease his disruptive behavior. In other words, Perez cannot dispute that he was on notice for the remaining $4,500 in fines that were imposed incrementally after the initial warning. In spite of the Stewards' repeated warnings, Perez continued to shout obscenities, even taunting the Board to raise the fine by cursing further. As one Steward explained, "every time I recommended a fine[, Perez] cursed more." Any unconstitutionality that may have resulted from imposition of the first $500 fine was cured when the Board subsequently discounted Perez's fine from $5,000 to $3,000.[9]

---

8. At oral argument, when pressed about the fact that he was eventually warned by the Stewards that his conduct could result in a fine, Perez seemed to resort to an *ultra vires* challenge to the regulation that he did not address in his brief. He asserted that even if he could be found to have been on notice of the escalating fines, the Board had *no* authority to impose such a fine because it was impossible for the Stewards to read section 4022.13 to apply to his conduct. Perez claimed that New York has *no* rule that applies to this situation. Even if we were to find that Perez had properly preserved this argument, we would reject it outright. We have no difficulty concluding that Perez's con-

duct qualified as "an action detrimental to the best interests of racing" and reject Perez's assertion that the Board acted *ultra vires* in penalizing him for his outrageous behavior.

9. While such a warning, standing alone, might prove insufficient to provide the requisite level of notice, *cf. Bouie v. City of Columbia,* 378 U.S. 347, 355 n. 5, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (noting that "[t]he determination whether a criminal statute provides fair warning of its prohibitions" should not be based on "an ad hoc appraisal of the subjective expectations of particular defendants"), we find that the notice that was provided to Perez by the Stewards serves as additional

We conclude that section 4022.13 is not void for vagueness as applied to Perez in this case because Perez's vulgar and disruptive behavior, which prevented the Stewards from investigating his very serious allegations against the Racing Secretary, was obviously "detrimental to the best interests of racing generally." Perez's position is further undercut by the fact that he was provided with actual, personal notice that his outrageous conduct would subject him to sanction.

## CONCLUSION

For the foregoing reasons, we hold that the Stewards' imposition of a $3,000 fine pursuant to section 4022.13 was not an impermissible restriction on Perez's speech. We also find that the regulation is not void for vagueness as applied to Perez's conduct. We therefore AFFIRM the judgment of the District Court.

support for our holding that section 4022.13    was not vague as applied to Perez.