10-4411-cv
Rothenberg v. Daus

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**AMENDED SUMMARY ORDER**
**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of July, two thousand twelve.

Present:     JOSEPH McLAUGHLIN,
             ROSEMARY S. POOLER,
             REENA RAGGI,
                      *Circuit Judges*.

_____

SAUL ROTHENBERG, EBRAHIM ABOOD, TOBBY KOMBO, KONSTANTINOS KATSIGIANNIS, BOUBACAR DOUMBIA, ROBERT DYCE, and MOUSTACH ALI, individually and on behalf of all others similarly situated,

                     *Plaintiffs-Appellants*,

                 -v.-                                          10-4411-cv

MATTHEW DAUS, DIANE MCGRATH-MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH BONINA, THOMAS COYNE, THE NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, THE CITY OF NEW YORK,

                     *Defendants-Appellees*.*

_____

Appearing for Appellants:        Daniel L. Ackman, Law Office of Daniel L. Ackman, New
                                 York, N.Y.

_____

*The Clerk of the Court is directed to amend the official caption of this action to conform to the caption listed above.

Appearing for Appellees:  Ellen Ravitch, Assistant Corporation Counsel of the City of New York, Stephen McGrath, Jerald Horowitz, & Amy Weinblatt, *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y.

Appearing for Amicus Curiae:  Katherine A. Rocco, Cravath, Swaine & Moore LLP, New York, N.Y. & Brian J. Kreiswirth, The Association of the Bar of the City of New York, New York, N.Y., *for* The Association of the Bar of the City of New York, New York. N.Y.

Appeal from the United States District Court for the Southern District of New York (Stein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED IN PART**, **VACATED IN PART, AND REMANDED** for further proceedings consistent with this Order.

Defendant-appellee the New York City Taxi and Limousine Commission ("TLC") summarily suspended, then revoked upon hearings, the taxicab driver's licenses of plaintiffs-appellants Ebrahim Abood, Boubacar Doumbia, Konstantinos Katsigiannis, and Saul Rothenberg ("drug-test plaintiffs") after they failed TLC's mandatory annual drug test. TLC summarily suspended the taxicab driver's licenses of plaintiffs-appellants Robert Dyce and Tobby Kombo, and the for-hire-vehicle ("FHV") driver's license of plaintiff-appellant Moustach Ali ("conviction plaintiffs"), after their arrests for off-duty conduct; upon plaintiffs' convictions,[1] TLC held revocation hearings and revoked plaintiffs' licenses.

Plaintiffs' amended complaint alleged that defendants violated plaintiffs' due process rights under the Fourteenth Amendment of the U.S. Constitution by: (1) imposing revocation without first fairly warning plaintiffs that their conduct would require revocation; (2) denying plaintiffs adequate notice regarding their individual revocation hearings; (3) failing to provide revocation hearings that gave plaintiffs an opportunity to be heard in a meaningful manner; and (4) failing to provide revocation hearings before impartial decision-makers. Plaintiffs also argued that conditioning licensing on mandatory drug testing violated their rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, and that the license-revocation procedures ran afoul of New York statutory and constitutional provisions.

Plaintiffs now appeal from an order of the district court that granted summary judgment for defendants on plaintiffs' federal claims; dismissed their state-law claims for lack of supplemental jurisdiction; and dismissed the suit as against individual defendants TLC, Matthew Daus, Diane McGrath-McKechnie, Joseph Eckstein, Elizabeth Bonina, and Thomas Coyne. *See Rothenberg v. Daus*, No. 08 Civ. 567, 2010 WL 3860417, at *2 (S.D.N.Y. Sept. 30, 2010) (Order

---

[1] Plaintiffs Dyce, Kombo, and Ali were convicted, respectively, of misdemeanor criminal possession of a forged instrument, N.Y. Penal Law § 170.20; felony second-degree assault, N.Y. Penal Law § 120.05(2); and driving while ability impaired, N.Y. Veh. & Traf. Law § 1192(1).

2

of District Court); *Rothenberg v. Daus*, No. 08 Civ. 567, 2010 WL 3860425, at *6 (S.D.N.Y. Sept. 8, 2010) (Report and Recommendation of Magistrate Judge). For the reasons explained herein, we vacate the dismissal of plaintiffs' federal due process claims, plaintiffs' state claims, and plaintiffs' claims against the individual defendants, and we remand for further proceedings on these claims; we affirm the decision of the district court dismissing TLC as a defendant, and we deem plaintiffs' Fourth Amendment claim forfeited on appeal.

We review de novo a district court's grant of summary judgment. *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 179 (2d Cir. 2011). The movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate only if no rational fact-finder "could find in favor of the nonmoving party because the evidence to support its case is so slight." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

We first address plaintiffs' claim that they were denied fair warning in violation of due process under the Fourteenth Amendment. "[A] law or regulation whose violation could lead to [a deprivation of life, liberty, or property] must be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Piscottano v. Murphy*, 511 F.3d 247, 280 (2d Cir. 2007) (internal quotation marks omitted). "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Thus, "regulations satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require." *Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d Cir. 1999). Even in the civil regulatory context, however, "we cannot defer to the [agency's] interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." *Upton v. S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996).

In granting summary judgment to defendants on this claim, the district court appears to have relied on discrete statements in the regulatory history of the TLC Rules.[2] While such history can inform a vagueness inquiry, that inquiry should begin with the text of the provision, considered "in context, and, where appropriate, with the benefit of canons of statutory construction and legislative history." *United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011) (citations omitted); *see VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010); *see also Cunney v. Bd. Trs.*, 660 F.3d 612, 621 (2d Cir. 2011). Similarly, while regulated parties should be "familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve," *Rock of Ages*, 170 F.3d at 156, the text of the rules themselves is relevant to the analysis, *see id.* ("Because the plain language of the standard gives fair notice of what it requires, [petitioner] had sufficient notice of the conduct prohibited." (citation, internal quotation marks, and alteration omitted)). We therefore vacate the grant of summary judgment on this claim and remand for further consideration of the fair warning issue

---

[2] Effective April 1, 2011, the TLC revised and renumbered the TLC Rules. *See* 35 R.C.N.Y. 70-01 ("Transition Rules"). In this Order, we cite to the earlier versions of the rules, as provided by the parties in the record below, which we understand to have been the rules in effect at the time of plaintiffs' revocation proceedings.

3

in light of this order. In particular, we identify a number of issues that warrant further briefing and, possibly, record development.

On remand, after such further discovery and briefing as the district court may order, the district court should consider whether the word "may" in the mandatory drug-testing rule misleadingly suggested a permissive standard rather than the mandatory one the TLC actually applied. *See* TLC Rules § 2-19(b)(2) ("[i]f the results of [the drug] test are positive, the driver's license *may* be revoked after a hearing . . . ." (emphasis added)); *see also Natural Res. Def. Council v. N.Y.C. Dep't of Sanitation*, 83 N.Y.2d 215, 220 (1994) (contrasting mandatory "shall" with discretionary "may" in New York City statutes). Moreover, Section 6-16, which governed FHV licensees, included a provision identical to that in Section 2-19, *except that* Section 6-16 included the following: "A finding that the driver has failed said [drug] test *will result in revocation* of the driver's license." TLC Rules § 6-16(v)(2) (emphasis added); Mark Hardekopf Declaration ¶ 125, App. 1187.

The court should also address plaintiffs' argument that specific TLC rules governing drugs suggested that a failed drug test would not be grounds for revocation absent a finding of addiction or on-duty use. *See* TLC Rules §§ 2-20(a), 2-86 (requiring revocation if a licensee operates a cab "while [his/her] driving ability is impaired by . . . drugs or other controlled substances;" uses controlled substances while driving a cab; and consumes controlled substances "for six hours prior to driving or occupying [a] taxicab"). While the magistrate judge concluded that "[a] positive drug test . . . serves as sufficient proof of possible use in relation to work or addiction," 2010 WL 3860425, at *6, defendants never suggested that they relied on these rules to revoke plaintiffs' licenses. The district court should consider whether defendants can do so now, and if so, whether the use of positive drug tests in this manner comported with procedural due process.

Thus, on remand, the district court needs to have defendants clarify which TLC Rules they relied upon to support the challenged action, whereupon the court should begin its notice inquiry with the text of those rules. To the extent the district court identifies ambiguities in the text, regulatory history expressing an intent to establish a "zero tolerance" policy and a "drug-free driving force" may be relevant to resolving ambiguity. We note, however, that such statements must themselves be considered in context. The same regulatory history statement that refers to a "policy of zero tolerance" also states that a positive drug test "*would* lead to the denial of a new license application, and *may* lead to the denial of a renewal application *following a hearing,*" Statement of Basis and Purpose, The City Record 2264 (June 26, 1998) (emphasis added), App. 1011.3, whereas it describes Sections 2-20 and 2-86 as imposing "a penalty of *mandatory revocation* of a . . . license for a conviction of operating a vehicle while impaired, or . . . operating a vehicle within six (6) hours of consuming . . . controlled substances," *id.* (emphasis added). Similarly, the regulatory history stating that the purpose of drug testing is a "drug-free driving force" also stated that TLC used the licensing requirement of non-addiction as a guideline for requiring drug testing, *see* Finding Pursuant to N.Y.C. Charter 1043(h)(1), The City Record 4696 (Nov. 21, 2005), App. 1074.2, suggesting that the purpose of drug testing could have been to determine whether there was reason to believe a driver was addicted.

4

Finally, on remand, the district court should give separate consideration to whether the rules fairly warned Abood of the "cold sample" policy in providing notice as to what would constitute a drug test failure.

As to conviction plaintiffs, TLC instituted their revocation proceedings under Section 8-15, which allows revocation after a hearing if a licensee no longer meets the licensing qualifications, which include "good moral character." *See* N.Y.C. Admin. Code § 19-505(b)(5); TLC Rules § 2-02(7). The district court, however, analyzed whether the conviction plaintiffs had fair warning not under the "good moral character" standard but under a "threat to the public health or safety" standard. 2010 WL 3860425, at *7 (citing N.Y.C. Admin. Code § 19-512.1(a)). On remand, the court should address plaintiffs' argument that the latter standard is inapplicable here because N.Y.C. Admin. Code § 19-512.1(a) by its terms applies only to revocation of *vehicle* licenses, not *driver's* licenses.[3]

To the extent the court determines that the "good moral character" standard is appropriate, even though "good moral character" may be vague, conviction plaintiffs cannot prevail if their conduct was so clearly within the ambit of the provision that they had warning that their conduct would lead to revocation. *See Vill. of Hoffman Estates*, 455 U.S. at 495. "[W]e must consider the context in which the regulation was enforced, i.e., we must evaluate [plaintiffs'] underlying conduct by reference to the norms" of the taxi-licensee community. *Perez v. Hoblock*, 368 F.3d 166, 175-76 (2d Cir. 2004) (provision prohibiting "any action detrimental to the best interests of racing" was not unconstitutionally vague as applied to fine jockey for "banging on tables, repeatedly shouting obscenities and threatening to choke a racing official" at an official meeting to investigate serious allegations).

In considering this question, the court should consider the specific prohibitions and penalties set forth in the TLC Rules, which "specifically permit[ted] or require[d] revocation for criminal acts committed while the driver is on-duty, offenses specific to taxi driving, and repeated traffic violations." Appellants' Br. 5; s*ee, e.g.*, TLC Rules §§ 2-60 ("Abuse and Physical Force Prohibited"), 2-61 ("Compliance with Law"), 2-86 ("Penalties for Violation of Rules Governing Taxicab Drivers"). Moreover, the district court should address the evidence in the record that an unpublished TLC policy imposed revocation as a per se penalty for conviction for certain offenses, including the offenses of which plaintiffs were convicted, with a hearing only to confirm the correct identity and nature of the offense. *See, e.g.*, Frank Fioramonti Deposition, App. 1312–14 (testifying that TLC had a zero tolerance policy for convictions and that, as an ALJ, he had not considered: whether the crime was on-duty, the driver's family history or driving record, or the factors set forth in the corrections law); Charles Fraser Declaration ¶ 25, App. 445 ("[L]icense revocation is mandatory when . . . illegal use of alcohol while driving is proved . . . 'no mitigation, no exceptions.'"); *id.* ¶ 38, App. 450 ("A felony conviction *per se* shows a lack of good moral character."); Hardekopf Deposition, App. 1366 (testifying that there is no defense to revocation once a conviction is proven).

---

[3] Contrary to defendants' contention, our decision in *Nnebe v. Daus*, 644 F.3d 147, 149 (2d Cir. 2011), had no occasion to settle this issue. TLC Rules § 8-16(a) specifically authorized the summary suspension procedure at issue there on the ground that action was required to ensure public health or safety, obviating the need to address the precise scope of N.Y.C. Admin. Code § 19-512.1(a).

The question is thus whether a taxi driver familiar with the rules would reasonably have expected a per se determination that certain convictions rendered him unfit rather than a case-by-case inquiry interpreting good moral character in light of the detailed regulations. We therefore vacate and remand for full consideration of this question in light of the evidence. With respect to Dyce, we note that while the district court correctly observed that the TLC Rules forbade using a taxi cab for an unlawful purpose, 2010 WL 3860417, at *2, the court did not address the fact that the specified penalty was a fine or license suspension of *up to 30 days*, not revocation, *see* TLC Rules §§ 2-61(b), 2-86. The magistrate judge also erroneously relied on administrative decisions that post-dated plaintiffs' criminal convictions, *see, e.g.*, 2010 WL 3860425, at *7 ("Proof of an arrest for second degree assault poses a threat to the public safety." (citing *TLC v. Chaudhry*, OATH Index No. 1012/08 (Nov. 30, 2007)); a decision of November 2007 could not have warned Kombo of the consequences of a criminal offense from March of that year. Our final point with respect to fair warning is that evidence of plaintiffs' actual knowledge of the policies is not dispositive. *See Perez*, 368 F.3d at 178 n.9 (holding that official's warning to plaintiff that his conduct would incur a fine was not dispositive of fair notice, but provided "additional support for our holding that [the regulation] was not vague as applied" to the plaintiff).

We also vacate the district court's grant of summary judgment with respect to plaintiffs' related claim that the hearing notice letters they received did not provide adequate notice of the proceedings against them. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). "[A]ssessing the adequacy of a particular form of notice requires balancing the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment." *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (internal quotation marks omitted). "The degree of required specificity . . . increases with the significance of the interests at stake." *Spinelli v. City of New York*, 579 F.3d 160, 172 (2d Cir. 2009). Here, the district court erred by holding the notices satisfactory without adequately considering the interests at stake and without considering the cost to the government of improved notice. "Under *Mathews* [*v. Eldridge*, 424 U.S. 319, 335 (1976)], the cost to the defendants of providing improved notice is a relevant consideration" in evaluating whether a hearing notice provides due process. *Kapps v. Wing*, 404 F.3d 105, 124–25 (2d Cir. 2005) (finding notice of denial of benefits constitutionally inadequate under *Mathews*). We note that as to both the conviction notices and drug-test notices, defendants appear to have used form letters. On remand, the district court should consider the interests at stake and the burden on the government of providing more specific notices.

Although the notice letters provided basic factual information, they were vague as to what, if any, provision of the regulations plaintiffs had violated. The magistrate judge seems to have concluded that the mention of the factual allegations provided sufficient notice, without addressing the letters' failure to specify the legal basis for revocation in greater detail. But specification of the legal violations may also be relevant to provide proper notice, depending on the circumstances; in *Spinelli*, for example, we concluded that the notice was inadequate in part because "there was no specificity as to the actual infractions." 579 F.3d at 172. The guiding inquiry is whether the notices adequately advised plaintiffs of what the hearings would require, *see Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (purpose of notice requirement is to "inform [an individual] of the charges and to enable him to marshal the facts and prepare a defense"), and review of the hearing transcripts is relevant to this determination, *see, e.g.*, *In re Gault*, 387 U.S.

1, 34 n.54 (1967) ("[O]ne of the purposes of notice is to clarify the issues to be considered, and as our discussion of the facts . . . shows, even the Juvenile Court Judge was uncertain as to the precise issues determined at the two 'hearings.'"); *Sira v. Morton*, 380 F.3d 57, 71 (2d Cir. 2004) (considering plaintiff's defense at the hearing in determining whether he received adequate notice); *Taylor v. Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (same). Thus, while we express no view on the ultimate question of adequacy of notice, we remand to the district court to reconsider the issue after such further briefing and record development as it deems necessary.

As to plaintiffs' claims that their hearings were inadequate, we vacate the grant of summary judgment and remand for further consideration in light of *Nnebe*, 644 F.3d at 155–56, which we decided after the district court's decision. Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The magistrate judge erred by conducting the *Mathews* analysis under the misimpression that the hearings took place prior to deprivation, and the district court erred by leaving the magistrate judge's *Mathews* analysis unchanged even though it recognized that the hearings occurred after deprivation. *See* 2010 WL 3860417, at *1. The timing of a hearing, however, is highly relevant to the *Mathews* analysis: in the pre-deprivation context, the government's short-term interest in ensuring public safety may justify lesser procedural protections—or even no hearing at all—but once the license has been suspended, the government has a weaker interest in a streamlined procedure. *See Nnebe*, 644 F.3d at 159–60; *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) ("[T]he costs to the state of additional pre-deprivation guarantees . . . outweigh possible benefits to the employee, *given the availability of a full post-deprivation hearing*." (emphasis added)).

In *Nnebe*, we considered TLC's summary suspension procedure, and held that in the pre-deprivation context, the balance of interests tipped toward the city because of the "strong government interest in ensuring that the public is protected in the short term, prior to any hearing," and because "a prompt post-deprivation hearing" was available. 644 F.3d at 159. We vacated the grant of summary judgment for further fact-finding as to the *post*-deprivation hearings, however, because "[b]alancing the *Mathews* factors in the post-deprivation context against the relative value of additional process could lead to the conclusion that the plaintiffs' interests outweigh the burden on the City of providing additional procedural protections beyond mere confirmation of identity and charge." *Id.* at 162.

As in *Nnebe*, we note with respect to conviction plaintiffs that while the magistrate judge determined that "[t]he licensee may introduce evidence to explain or mitigate the significance of the criminal conviction," 2010 WL 3860425, at *11, "the record strongly suggests that, whether *de facto* or *de jure,* an ALJ is strictly prevented from considering anything other than the identity of the driver and the offense" of which he was convicted. 644 F.3d at 161; *see supra*, discussion of evidence of zero tolerance policy with respect to criminal convictions.

7

On remand, the district court should also reconsider its conclusion as to the adequacy of the fitness hearings for the drug-test plaintiffs, as the court failed to acknowledge the record evidence raising questions as to the accuracy of TLC's testing procedures, *see* Affidavit of James Woodford, Ph.D., App. 1386–93, which may present a factual question as to the risk of erroneous deprivation.  In the post-deprivation context, the risk of erroneous deprivation might outweigh the burden of additional procedure on the government, and further findings as to the risk of error and burden on the government are needed.

The magistrate judge's mischaracterization of the hearings as pre-deprivation hearings also affected its analysis of whether state administrative review proceedings under Article 78 of the New York Civil Practice Law and Rules provided an independent basis to dismiss plaintiffs' claims.  *See* 2010 WL 3860425, at *14 ("Article 78 Provides Plaintiffs with Sufficient Post-Deprivation Due Process").  We therefore vacate that portion of the district court's ruling and remand for further proceedings.  We note that, where a due process violation is based on an established procedure rather than a random, unauthorized act, the availability of additional process in an Article 78 proceeding does not a bar a due process claim but, rather, is a relevant factor in the *Mathews* analysis.  *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006) (including availability of post-deprivation Article 78 review in *Mathews* analysis of adequacy of pre-deprivation procedure).  In considering Article 78 review in its *Mathews* analysis, the district court should consider the timing and scope of review available under this procedure.  Article 78 review of quasi-judicial administrative proceedings, like those at issue here, is limited to in scope to "certiorari to review," *see* Siegel, N.Y. Practice § 560 (5th ed.), in which the court reviews the agency decision under the deferential substantial evidence standard, and may not substitute its view of the evidence for the agency's.  *See, e.g.*, *Café La China Corp. v. N.Y.S. Liquor Auth.*, 841 N.Y.S.2d 30, 31 (N.Y. App. Div. 2007).

While recognizing that a judge's pecuniary interest in the outcome of a proceeding can create a risk of unfairness that is "intolerably high," *Greenberg v. Bd. of Governors*, 968 F.2d 164, 167 (2d Cir. 1992), the court rejected plaintiffs' bias claim because it erroneously required plaintiffs to "present allegations against a specific adjudicator," 2010 WL 3860425, at *12, and rejected their claim because plaintiffs neither "name[d] one ALJ in their Amended Complaint nor allege[d] any specific improper conduct," *id.*  The district court relied upon *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 58–59 (1972), but neither case requires naming a specific adjudicator nor even addresses a claim, like plaintiffs', that an entire adjudicative body is biased.  *Tumey* and *Ward* stand for the basic proposition that an adjudicator's pecuniary interest in a case violates the due process right to a hearing before an impartial tribunal when the interest "'would offer a possible temptation to the average man as a judge to forget the burden of proof . . . , or which might lead him not to hold the balance nice, clear and true between the state and the accused,'" *Ward*, 409 U.S. at 60 (quoting *Tumey*, 273 U.S. at 532), and this principle need not be limited to cases involving only specific adjudicators, *cf. Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (rejecting claim of systemic bias because pecuniary incentive was too remote and attenuated, and not discussing any requirement of naming a particular adjudicator).

The district court should thus re-evaluate plaintiffs' claim of bias without requiring the naming of specific adjudicators.  In so doing, it should consider to what degree any "presumption of honesty and integrity" under *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), may be

8

rebutted by the evidence proffered by plaintiffs, including financial incentives and a history of ALJs ruling for the agency. *See Schweiker v. McClure*, 456 U.S. 188, 196 (1982) (recognizing that "[t]his presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification"). Further, the court should consider evidence in the record that it did not previously address or mischaracterized. The magistrate judge concluded that "[ALJ Eric] Gottlieb did not serve as an ALJ for the named Plaintiffs," 2010 WL 3860425, at *12, but, as defendants recognize, ALJ Gottlieb was plaintiff Abood's ALJ. Appellees' Br. 27. There is also evidence that "[s]hort of termination, an ALJ can simply be left off the calendar, as the TLC has done." Appellants' Br. 14. Gottlieb testified in his deposition that he believed that if he had issued the recommendation he had wanted to issue "it would have been considered insubordination." Eric Gottlieb Deposition, App. 203.14. In rejecting plaintiffs' evidence of internal e-mails and supervisory control by higher-level ALJs, including the ALJ Manual, the district court misconstrued *Nash v. Bowen*, 869 F.2d 675, 680-81 (2d Cir. 1989). While we stated in *Nash* that "[p]olicies designed to insure a reasonable degree of uniformity among ALJ decisions" were legitimate and worthy of encouragement, we specifically noted that such policies "were permissible *so long as such efforts did not directly interfere with 'live' decisions*." 869 F.2d at 680 (emphasis added). Indeed, one of the policies in *Nash* was a "cause for concern" because it "attempted to control the number of ALJ decisions reversing previous . . . determinations," *id.* at 678, and such coercion would "constitute . . . a clear infringement of decisional independence," *id.* at 681 (internal quotation marks omitted).

Finally, to the extent that the district court concluded that the availability of an Article 78 proceeding cured any unconstitutional ALJ bias, *see* 2010 WL 3860425, at *13 (citing *Locurto*, 264 F.3d at 174), the court should explain or re-evaluate this conclusion in light of *Ward*, 409 U.S. at 61–62; *accord Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 618 (1993). In doing so, the district court may require further record development as to the interests at stake. We here express no view as to whether there was unconstitutional bias and whether any such bias was cured by the availability of Article 78 proceedings.

As to the remaining issues on appeal, we hold as follows. We affirm the dismissal of TLC as a defendant because "[i]t is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in § 1983 actions." *Nnebe*, 644 F.3d at 158 n.6. As to the Fourth Amendment claim, plaintiffs have forfeited appellate review by discussing it in only a single sentence in a footnote. *See* Appellants' Br. 36 n.17; *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In light of our vacatur of the dismissal of plaintiffs' federal due process claims, we also vacate the dismissal of the state law claims and the dismissal of the claims against the individual defendants in their personal and official capacities.

Accordingly, the judgment of the district court hereby is AFFIRMED IN PART, VACATED IN PART, AND REMANDED for further proceedings consistent with this Order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

9